ANDREW L. PACKARD (State Bar No. 168690)
WILLIAM N. CARLON (State Bar No. 305739)
Law Offices of Andrew L. Packard
245 Kentucky Street, Suite B3
Petaluma, CA 94952
Tel: (707) 782-4060
E-mail: andrew@packardlawoffices.com
            wncarlon@packardlawoffices.com

WILLIAM VERICK (State Bar No. 140972)
Klamath Environmental Law Center
1125 16th Street, Suite 204
Arcata, CA 95521
Tel: (707) 630-5061
E-mail: wverick@igc.org

Attorneys for Plaintiff
CALIFORNIANS FOR ALTERNATIVES
TO TOXICS

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIANS FOR ALTERNATIVES TO TOXICS,<br><br>          Plaintiff,<br><br>     v.<br><br>R&L LUMBER COMPANY LLC, JUSTIN LENA, and UBI RUIZ,<br><br>          Defendants. | Case No.<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND CIVIL PENALTIES**<br><br>**(Federal Water Pollution Control Act, 33 U.S.C. §§ 1251-1387)** |

CALIFORNIANS FOR ALTERNATIVES TO TOXICS ("CAT"), by and through its

counsel, hereby alleges:

## I.    **JURISDICTION AND VENUE**

1.      This is a civil suit brought under the citizen suit enforcement provision of the

Federal Water Pollution Control Act, 33 U.S.C. §§ 1251–1387 (the "Clean Water Act," "CWA"

or "Act") against R&L Lumber Company LLC, Justine Lena, and Ubi Ruiz ("Defendants").

This Court has subject matter jurisdiction over the parties and the subject matter of this action

pursuant to Section 505(a)(1) of the Act, 33 U.S.C. § 1365(a), and 28 U.S.C. § 1331 (an action

arising under the laws of the United States).  Specifically, this action arises under Section 505(a)(1)(A) of the Act, 33 U.S.C. § 1365(a)(1)(A) (citizen suit to enforce effluent standard or limitation).  The relief requested is authorized pursuant to 33 U.S.C. §1365(a) (injunctive relief), 1319(d) (civil penalties), and 28 U.S.C. §§ 2201–2202 (power to issue declaratory relief in case of actual controversy and further necessary relief based on such a declaration).

2. On September 30, 2022, Plaintiff provided written notice to Defendants, via certified mail, of Defendants' violations of the Act ("Notice Letter"), and of Plaintiff's intention to file suit against Defendants, as required by the Act.  *See* 33 U.S.C. § 1365(b)(1)(A); 40 C.F.R. § 135.2(a)(1).  Plaintiff mailed a copy of the Notice Letter to the Administrator of the United States Environmental Protection Agency ("EPA"); the Administrator of EPA Region IX; the Executive Director of the State Water Resources Control Board ("State Board"); and the Executive Officer of the Regional Water Quality Control Board, North Coast Region ("Regional Board"), pursuant to 40 C.F.R. § 135.2(a)(1).  A true and correct copy of the Notice Letter is attached hereto as **Exhibit 1** and is incorporated by reference.

3. More than sixty days have passed since Plaintiff served the Notice Letter on Defendants and the agencies.  Plaintiff is informed and believes, and thereupon alleges, that neither the EPA nor the State of California has commenced nor is diligently prosecuting a court action to redress the violations alleged in this Complaint.  This action's claims for civil penalties are not barred by any prior administrative penalty under Section 309(g) of the Act, 33 U.S.C. § 1319(g).

4. Venue is proper in the Northern District of California pursuant to Section 505(c)(1) of the Act, 33 U.S.C. § 1365(c)(1), because the sources of the violations are located within this District.  Venue is also proper under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.  Intra-district venue is proper in Eureka, because the sources of the violations are located within Humboldt County.

//

//

Complaint for Declaratory
And Injunctive Relief, Civil Penalties                    2

## II.    **INTRODUCTION**

5.      This Complaint seeks relief for Defendants' violations of the CWA at Defendants' facility located at 1220 5th Street, in Arcata, California ("Facility").  Defendants discharge pollutant-contaminated storm water associated with industrial activity from the Facility into Janes Creek, Jolly Giant Creek, McDaniel Slough, Arcata Bay and the Pacific Ocean ("Impacted Waters").  The Impacted Waters are waters of the United States within the meaning of the Clean Water Act.  Defendants are in violation of both the substantive and procedural requirements of the CWA.

6.      Defendants' unpermitted discharges of polluted storm water from the Facility violate Section 301(a) of the Act, 33 U.S.C. § 1311(a), which prohibits the discharge of storm water associated with industrial activities to waters of the United States except in compliance with the terms of a National Pollutant Discharge Elimination System ("NPDES") permit issued pursuant to Section 402 of the Act, 33 U.S.C. § 1342.  These violations are ongoing and continuous.

7.      Defendants' failure to obtain coverage under the State of California's General Industrial Permit for storm water discharges, State Board Water Quality Order No. 91-13-DWQ, *amended by* Nos. 92-12-DWQ, 97-03-DWQ, and 14-0057-DWQ, NPDES General Permit No. CAS000001 (hereinafter "General Permit" or "Permit") is a violation of Section 301(a) of the Act.

8.      The failure on the part of industrial facility operators, such as Defendants, to apply for and comply with the General Permit is recognized as a significant cause of the continuing decline in water quality of receiving waters.  The general consensus among regulatory agencies and water quality specialists is that storm water pollution amounts to more than half the total pollution entering the aquatic environment each year.  With every rainfall event, hundreds of thousands of gallons of polluted storm water originating from industrial facilities discharge to the Impacted Waters.

//

//

Complaint for Declaratory
And Injunctive Relief, Civil Penalties            3

III.    **PARTIES**

9.      Defendant R&L Lumber Company LLC is a California limited liability company.

10.     The Agent for Service of Process for R&L Lumber Company LLC is Brie Bales.

11.     Defendant Justin Lena is a manager or member of R&L Lumber Company LLC.

12.     Defendant Ubi Ruiz is a manager or member of R&L Lumber Company LLC.

13.     Plaintiff Californians for Alternatives to Toxics ("CAT") is a non-profit public benefit corporation organized under the laws of California, based in Arcata, California.  CAT's primary goal as an organization is to defend the environment from the effects of toxic chemicals, and to preserve and protect human health, wildlife and recreational and aesthetic resources that depend on the aquatic and riparian environment provided by the waters of the State of California and of the United States.  This includes the waters referenced above, into which Defendants discharge polluted storm water.  To further its goals, CAT actively seeks federal and state agency implementation of state and federal water quality laws, including the CWA, and directly initiates enforcement actions on behalf of itself and its members as necessary.

14.     Members of CAT—including citizens, taxpayers, property owners, and residents—live, work, travel, and recreate on and near the Impacted Waters, into which Defendants cause pollutants to be discharged.  These members of CAT use and enjoy the Impacted Waters to obtain food they eat, as well as for recreational, educational, scientific, conservation, aesthetic, and spiritual purposes.  Defendants' discharges of storm water containing pollutants impairs each of those uses.  Thus, the interests of CAT's members have been, are being, and will continue to be adversely affected by Defendants' failure to comply with the CWA and the General Permit.

15.     Members of CAT reside in California and use and enjoy California's numerous rivers for recreation and other activities.  Members of CAT use and enjoy the Impacted Waters, into which Defendants have caused, are causing, and will continue to cause, pollutants to be discharged.  Members of CAT use these areas to hike, fish, boat, kayak, swim, bird watch, view wildlife, and engage in scientific study, including monitoring activities, among other things.  Defendants' discharges of pollutants threaten or impair each of those uses or contribute to such

threats and impairments.  Thus, the above-referenced gustatory, recreational and aesthetic interests of CAT's members have been, are being, and will continue to be adversely affected by Defendants' ongoing failure to comply with the CWA.  The relief sought herein will redress the harms to Plaintiff caused by Defendants' activities because that relief will significantly reduce pollution discharged from Defendants' Facility into the Impacted Waters.

16.     Continuing commission of the acts and omissions alleged above will irreparably harm Plaintiff and the citizens of the State of California, for which harm they have no plain, speedy, or adequate remedy at law.

## IV.  LEGAL BACKGROUND

### A.  Clean Water Act

17.     Congress enacted the CWA to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters."  33 U.S.C. § 1251(a).  The CWA establishes an "interim goal of water quality which provides for the protection and propagation of fish, shellfish, and wildlife and provides for recreation in and on the water . . . ."  33 U.S.C. § 1251(a)(2).  To these ends, Congress developed both a water quality-based and a technology-based approach to regulating discharges of pollutants from point sources into waters of the United States.

18.     Section 301(a) of the Act, 33 U.S.C. § 1311(a), prohibits the discharge of any pollutant from a point source into waters of the United States, unless such discharge complies with various enumerated sections of the Act.  Among other things, Section 301(a) prohibits discharges not in conformance with a NPDES permit, such as discharges without a NPDES permit or discharges that violate the terms of an NPDES permit issued pursuant to Section 402 of the Act.  33 U.S.C. § 1342.

19.     The term "discharge of pollutants" means "any addition of any pollutant to navigable waters from any point source."  33 U.S.C. § 1362(12).  Pollutants are defined to include, among other examples, industrial waste, chemical wastes, biological materials, heat, rock, and sand discharged into water.  33 U.S.C. § 1362(6).

20.     A "point source" is defined as "any discernible, confined and discrete

conveyance, including but not limited to any pipe, ditch, channel, tunnel, [or] conduit . . . from which pollutants are or may be discharged."  33 U.S.C. § 1362(14).

21.     "Navigable waters" means "the waters of the United States."  33 U.S.C. § 1362(7).  Waters of the United States includes, among other things, waters that are or were susceptible to use in interstate commerce and tributaries to such waters.  40 C.F.R. § 230.3.

22.     Section 402 of the Act, 33 U.S.C. § 1342, establishes the NPDES program—a permitting program that regulates the discharge of pollutants into waters of the United States. Section 402(p) establishes a framework for regulating municipal and industrial storm water discharges under the NPDES program, 33 U.S.C. § 1342(p), and, specifically, requires a NPDES permit for storm water discharges associated with industrial activity.  33 U.S.C. § 1342(p)(2)(B). Section 402 authorizes states with approved NPDES permit programs to regulate industrial storm water discharges, through individual permits issued to dischargers and/or through the issuance of a single, statewide general permit applicable to all industrial storm water dischargers.  33 U.S.C. § 1342(b).

23.     Section 505(a)(1) provides for citizen enforcement actions against any "person," including individuals, corporations, or partnerships for violations of NPDES permit requirements and for unpermitted discharges of pollutants.  33 U.S.C. § 1362(5); 33 U.S.C. §1365(a)(1) (authorizing actions against any person alleged to be in violation of an effluent standard or limitation); 33 U.S.C. § 1365(f) (defining "effluent limitation" broadly to include "a permit or condition thereof issued under [Section 402] of this title," and "any unlawful act under subsection (a) of [Section 301] of this title").

24.     An action for injunctive relief under the Act is authorized by 33 U.S.C. § 1365(a). Violators of the Act are also subject to an assessment of civil penalties of up to $59,973 per day per violation for all violations occurring after November 2, 2015, pursuant to Sections 309(d) and 505 of the Act.  33 U.S.C. §§ 1319(d), 1365; 40 C.F.R. §§ 19.1–19.4.

**B.     California Industrial Storm Water General Permit**

25.     Pursuant to Section 402 of the Act, 33 U.S.C. § 1342, the Administrator of EPA has authorized the State Board to issue NPDES permits in California, including general permits.

26.     On November 16, 1990, the EPA promulgated Phase I storm water regulation in compliance with section 402(p) of the Act.  55 Fed. Reg. 47990, codified at 40 C.F.R. § 122.26. These regulations require operators of facilities subject to storm water permitting that discharge storm water associated with industrial activity to obtain an NPDES permit.  *Id*.

27.     The State Board elected to issue a statewide general permit for industrial discharges.  The State Board issued the General Permit on or about November 19, 1991, modified the General Permit on or about September 17, 1992, and reissued the General Permit on April 17, 1997 and again on April 1, 2014 (effective July 1, 2015), pursuant to Section 402(p) of the Clean Water Act, 33 U.S.C. § 1342(p).

28.     To discharge storm water associated with industrial activities lawfully in California, industrial dischargers must obtain General Permit coverage and comply with the terms of the General Permit, or obtain and comply with an individual NPDES permit.  33 U.S.C. §§ 1311(a), 1342(p)

29.     The industrial activities covered under the General Permit are described in Attachment A to the General Permit.

30.     Facilities discharging, or having the potential to discharge, storm water associated with industrial activity that have not obtained an individual NPDES permit must apply for coverage under the State's General Permit by filing a Notice of Intent ("NOI").  The General Permit requires new dischargers to register for NOI coverage at least seven days prior to the commencement of industrial operations.  General Permit, Section II.B.5.  Dischargers with active NOI coverage under Order No. 97-03-DWQ were required to register for NOI coverage under Order No. 2014-0057-DWQ by July 1, 2015.  General Permit, Section II.B.4.b.

31.     Dischargers registering for NOI coverage under the General Permit must certify and submit Permit Registration Documents ("PRD") via the Storm Water Multiple Application and Report Tracking System ("SMARTS") website.  General Permit, Section II.B.

32.     PRDs consist of a completed NOI and signed certification statement, a copy of a current site map from the Storm Water Pollution Prevention Plan ("SWPPP"), and a SWPPP. General Permit, Section II.B.1.b.

33.     Dischargers registering for NOI coverage under the General Permit must also pay the appropriate annual fee in accordance with 23 C.C.R. § 2200 *et seq.* General Permit, Section II.B.1.c.

34.     When PRDs are certified and submitted and the annual fee is received, the State Water Board will assign the discharger a Waste Discharger Identification ("WDID") number.

35.     New dischargers applying for NOI coverage under the General Permit that will be discharging to a water body with a 303(d) listed impairment are ineligible for coverage unless the discharger submits data and/or information, prepared by a Qualified Industrial Storm Water Practitioner, demonstrating that (1) the discharger has eliminated all exposure to storm water of the pollutant(s) for which the water body is impaired, has documented the procedures taken to prevent exposure onsite, and has retained such documentation with the SWPPP at the facility; (2) the pollutant(s) for which the water body is impaired is not present at the discharger's facility, and the discharger has retained documentation of this finding with the SWPPP at the facility; or, (3) the discharge of any listed pollutant will not cause or contribute to an exceedance of a water quality standard. This is demonstrated if: (1) the discharge complies with water quality standards at the point of discharge, or (2) if there are sufficient remaining waste load allocations in an approved TMDL and the discharge is controlled at least as stringently as similar discharges subject to that TMDL. General Permit, Section VII.B

36.     Once regulated by a NPDES permit, facilities must strictly comply with all of the terms and conditions of that permit. A violation of the General Permit is a violation of the Act. *See* General Permit, Section XXI.A.

## V.     STATEMENT OF FACTS

### a.   The Facility.

37.     Defendants own and operate the Facility, a lumber mill located in Humboldt County, California.

38.     Defendants have operated the Facility for approximately 5 years.

39.     Defendants' primary industrial activities at the Facility include the milling of logs, storage and treatment of logs, de-barking of logs, the storage and handling of soil amendments,

the storage of dimensional lumber, loading and unloading of logs and wastes associated with log-processing, equipment storage and maintenance, and the storage of various industrial materials, including bark, sawdust, oil and grease, and fuel.

40.     Defendants conduct many of the industrial activities described above outside in areas exposed to storm water.  As seen in the photograph of the Facility, taken on October 2, 2022, and attached hereto as **Exhibit 2**, Defendants stockpile logs, finished wood products, sawdust, and offcuts outside where the materials are exposed to storm water.

41.     Defendants operate heavy equipment, including trucks for transporting logs, sawdust and other materials, wheel loaders, log loading cranes, forestry equipment, and milling equipment associated with the production and management of the industrial materials.

42.     Operation of the heavy equipment described above causes the unpaved surfaces at the Facility to erode, and make available for discharge the pollutants otherwise bound in the soil.

43.     The industrial activities at the Facility fall under Standard Industrial Classification ("SIC") Codes 2411 ("Logging") and 2421 – ("Sawmills and Planing Mills").

44.     The Facility collects and discharges storm water associated with industrial activity from the Facility into a roadside ditch that runs along Highway 255 ("Highway 255 Ditch").

45.     Defendants store industrial materials, including sawdust, bark, and other log-processing byproducts and wastes, in the areas of its Facility that are adjacent to the Highway 255 Ditch, and in some places, Defendants' industrial materials spill into the Highway 255 Ditch.

46.     During rain events, storm water comes into contact with these industrial materials, stockpiled in the open, and storm water discharges from the Facility into the Highway 255 Ditch.

47.     Storm water that comes into contact with Defendants' industrial activities and materials picks up pollutants, such as sediment, oil and grease, material that elevates chemical oxygen demand, tannins and lignens, metals such as lead, iron and aluminum, semi-volatile organic compounds such as pentachlorophenol, tetrachlorophenol, polychlorinated dibenzo dioxins and polychlorinated dibenzo furans, and discharges them from the Facility into the Highway 255 Ditch.

48.     The Highway 255 Ditch carries the pollutants discharged from the Facility to Janes Creek, Jolly Giant Creek, McDaniel Slough, and then eventually to Arcata Bay and the Pacific Ocean.

49.     Janes Creek, Jolly Giant Creek, McDaniel Slough, Arcata Bay and the Pacific Ocean are waters of the United States within the meaning of the Clean Water Act.  40 C.F.R. § 120.2(3).

50.     Arcata Bay is listed on the California 2020-2022 Integrated Report 303(d) List as being impaired for Dioxin Toxic Equivalents and PCBs (Polychlorinated biphenyls).

**b.  Historical Uses of the Facility**

51.     The historical uses of the Facility include a lumber mill that treated lumber with pentachlorophenol ("PCP") and tetrachlorophenol ("TCP") and manufactured glue laminated wood beams between 1965 and 1980.

52.     Pentachlorophenol and by-products of its synthesis includes higher-chlorinated dioxins and furans, polychlorinated phenols, hexachloro benzene, and other by-products.

53.     In February of 1987, storm water runoff samples were found to contain PCP and TCP.

54.     On December 31, 1987, the Regional Board issued Cleanup and Abatement Order No. 87-148 for Beaver Lumber Company of Arcata, who was then operating at the site.

55.     Between December 1989 and January 1990, approximately 3,100 tons of contaminated soil and 85,000 gallons of contaminated groundwater were removed from the site.

56.     A groundwater pump and treat system operated at the site between May 1993 and November 1997 which removed, treated and disposed of over 2 million gallons of contaminated groundwater.

57.     Beginning in July 2002, an additional 2,200 tons of contaminated soils were removed from the site.

58.     An August 1, 2005 Soil and Groundwater Management Contingency Plan ("Contingency Plan") prepared by SHN Consulting Engineers & Geologists, Inc. indicates that, despite the remediation, contaminated soil and groundwater still exist at various areas of the site.

59.     Specifically, the Contingency Plan identifies areas in the vicinity of building foundations, due to limited access during excavation, that are known to have remaining soil contamination.

60.     The Contingency Plan attaches a Site Safety Plan which states that "[t]he soils are known to contain residual contamination of these materials: Pentachlorophenol (PCP), Tetrachlorophenol (TCP), and Stoddard Solvent."

**c.   Defendants' Failure to Register for NOI General Permit Coverage.**

61.     Defendants have operated the Facility without NOI coverage under the General Permit (Order No. 97-03-DWQ) since it began operations approximately five years ago.

62.     Defendants have been operating their Facility without any General Permit coverage continuously for approximately five years.

63.     Defendants continue to discharge storm water associated with industrial activities from the Facility.

64.     On November 2, 2022, Regional Board staff performed an unannounced inspection at the Facility and prepared an inspection memorandum that was uploaded to SMARTS on November 18, 2022 ("Inspection Memorandum").  A true and correct copy of the Inspection Memorandum is attached hereto as **Exhibit 3**.

65.     The Inspection Memorandum includes photographs of Defendants' industrial activities and industrial materials and notes that Defendants "were in violation of [General Permit] requirements for failure to obtain the permit coverage" at the time of the inspection.

66.     Defendants have not certified and submitted a completed NOI and signed certification statement to SMARTS.

67.     Defendants have not certified and submitted a copy of a current site map from the SWPPP to SMARTS.

68.     Defendants have not certified and submitted a SWPPP to SMARTS.

69.     Defendants have not paid the appropriate annual fee in accordance to General Permit Section II.B.2.c and 23 C.C.R. § 2200 et seq.

70.     The State Water Board has not assigned Defendants a WDID for the Facility.

71.     Defendants discharge into Arcata Bay pollutants for which Arcata Bay is impaired and are thus ineligible for General Permit coverage unless they comply with the requirements of General Permit Section VII.B.

72.     Defendants have not complied with the requirements of General Permit Section VII.B.1 because they have not eliminated all exposure to storm water of dioxins and polychlorinated biphenyls, they have not documented the procedures taken to prevent exposure onsite, and they have not retained such documentation with the SWPPP at the Facility.

73.     Defendants have not complied with the requirements of General Permit Section VII.B.2 because they have not demonstrated that dioxins and polychlorinated biphenyls are not present at the Facility, and Defendants have not retained documentation of this finding with the SWPPP at the Facility.

74.     Defendants have not complied with the requirements of General Permit Section VII.B.3 because they have not demonstrated that the discharge of dioxins and polychlorinated biphenyls will not cause or contribute to an exceedance of a water quality standard.

75.     Because Defendants have not complied with General Permit Section VII.B, they are not eligible for General Permit Coverage.

## VI.     CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
**Discharge of Pollutants from the Facility in Violation of the Act**
**(Violations of 33 U.S.C. §§ 1311(a), 1342)**

76.     Plaintiff incorporates the allegations contained in the above paragraphs as though fully set forth herein.

77.     Plaintiff is informed and believes, and thereupon alleges, that on every day identified in Attachment A to the Notice Letter, and during every significant rain event between at least September 30, 2017 and the date of the filing of this Complaint, Defendants violated section 301(a) of the CWA, 33 U.S.C. § 1311(a), by discharging storm water associated with industrial activities generated at its Facility into the Impacted Waters without a NPDES permit issued pursuant to 33 U.S.C. § 1342.

78.     Each and every day Defendants discharge, and continue to discharge, pollutants to

waters of the United States from the Facility without a NPDES permit issued pursuant to 33 U.S.C. § 1342 is a separate and distinct violation of Section 301(a) of the Act.  33 U.S.C. § 1311(a).

79.     Defendants are subject to civil penalties for each and every violation of the Act since September 30, 2017.  *See* 33 U.S.C. §§ 1319(d), 1365; 40 C.F.R. § 19.4.

80.     These violations are ongoing and continuous so long as Defendants operate their Facility without a permit as required by 33 U.S.C. §§ 1311, 1342.

81.     Continuing commission of the acts and omissions alleged herein irreparably harms the waters of the United States, Plaintiff, and its members, for which harm Plaintiff has no plain speedy or adequate remedy at law.

## VII.    <u>RELIEF REQUESTED</u>

Wherefore, Plaintiff respectfully requests that this Court grant the following relief:

a.     Declare Defendants to have violated and continue to be in violation of CWA section 301(a), 33 U.S.C. § 1311(a), for discharging pollutants from the Facility not in compliance with a permit issued pursuant to CWA Section 402, 33 U.S.C. § 1342;

b.     Enjoin Defendants from discharging pollutants from the Facility and to the surface waters surrounding and downstream from the Facility in violation of the General Permit and the Clean Water Act;

c.     Enjoin Defendants from further violating the substantive and procedural requirements of the General Permit and the Clean Water Act;

d.     Order Defendants to pay civil penalties of $59,973 per day per violation for each violation, pursuant to Sections 309(d) and 505(a) of the Clean Water Act, 33 U.S.C. §§ 1319(d), 1365(a), and 40 C.F.R. §§ 19.1–19.4;

e.     Order Defendants to take appropriate actions to restore the quality of navigable waters impaired by its activities;

f.     Award Plaintiff's costs and fees (including reasonable attorney, witness, and consultant fees) as authorized by the Act, 33 U.S.C. § 1365(d); and,

g.     Award any such other and further relief as this Court may deem appropriate.

*//*

Dated: November 30, 2022                    Respectfully Submitted,

                                            LAW OFFICES OF ANDREW L. PACKARD

                                            By: /s/ William N. Carlon

                                            William N. Carlon
                                            Attorney for Plaintiff
                                            CALIFORNIANS FOR
                                            ALTERNATIVES TO TOXICS

# EXHIBIT 1

Law Offices Of

# ANDREW L. PACKARD

245 Kentucky Street, Suite B3, Petaluma, CA 94952
Phone (707) 782-4060   Fax (707) 782-4062
Info@PackardLawOffices.com

September 30, 2022

**VIA CERTIFIED MAIL**

| | |
|---|---|
| Justin Lena and Ubi Ruiz | Brie Bales |
| R&L Lumber Company LLC | R&L Lumber Company LLC |
| 1220 5th Street | 2336 Bates Avenue |
| Arcata, CA 95521 | Concord, CA 94520 |

**Re:    NOTICE OF VIOLATIONS AND INTENT TO FILE SUIT UNDER THE
         FEDERAL WATER POLLUTION CONTROL ACT ("CLEAN WATER ACT")
         (33 U.S.C. §§ 1251 *et seq.*)**

Dear Justin Lena, Ubi Ruiz, and Brie Bales:

Californians for Alternatives to Toxics ("CATs") provides this notice of violations of the Clean Water Act ("the Act") occurring at R&L Lumber's industrial facility located at 1220 5th Street, in Arcata, California (the "Facility"). This letter is being sent to you as the responsible owners, officers and/or operators of the Facility. Unless otherwise noted, R&L Lumber Company LLC, Justin Lena, Ubi Ruiz, and Brie Bales shall hereinafter be collectively referred to as "R&L Lumber." CATs is a non-profit association dedicated to the preservation, protection and defense of the environment, wildlife and natural resources of California waters, including the waters into which R&L Lumber discharges polluted storm water.

Pursuant to Section 309(d) of the Act (33 U.S.C. § 1319(d)) and the Adjustment of Civil Monetary Penalties for Inflation (40 C.F.R. § 19.4) each separate violation of the Act subjects R&L Lumber to a penalty of up to $59,973 per day per violation for all violations occurring between September 30, 2017 and the present. In addition to civil penalties, CATs will seek injunctive relief preventing further violations of the Act pursuant to Sections 505(a) and (d) (33 U.S.C. § 1365(a) and (d)) and such other relief as permitted by law. Lastly, Section 505(d) of the Act (33 U.S.C. § 1365(d)) permits prevailing parties to recover costs and fees, including attorneys' fees.

The Clean Water Act requires that sixty (60) days prior to the initiation of a citizen-enforcement action under Section 505(a) of the Act (33 U.S.C. § 1365(a)), a citizen enforcer must give notice of its intent to file suit. Notice must be given to the alleged violator, the U.S. Environmental Protection Agency, and the Chief Administrative Officer of the water pollution control agency for the State in which the violations occur. *See* 40 C.F.R. § 135.2. As required by the Act, this letter provides statutory notice of the violations that have occurred, and continue to occur, at the Facility. 40 C.F.R. § 135.3(a). At the expiration of sixty (60) days from the date of this letter, CATs intends to file suit under Section 505(a) of the Act in federal court against R&L Lumber for violations of the Clean Water Act and the Permit.

Notice of Violation and Intent to File Suit
September 30, 2022
Page 2

I.        **Background.**

      A.        **The Clean Water Act.**

Congress enacted the CWA in 1972 in order to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251. The Act prohibits the discharge of pollutants into United States waters except as authorized by the statute. 33 U.S.C. § 1311; *San Francisco BayKeeper, Inc. v. Tosco Corp*., 309 F.3d 1153, 1156 (9th Cir. 2002). The Act is administered largely through the NPDES permit program. 33 U.S.C. § 1342. In 1987, the Act was amended to establish a framework for regulating storm water discharges through the NPDES system. Water Quality Act of 1987, Pub. L. 100-4, § 405, 101 Stat. 7, 69 (1987) (codified at 33 U.S.C. § 1342(p)); *see also Envtl. Def. Ctr., Inc. v. EPA*, 344 F.3d 832, 840-41 (9th Cir. 2003) (describing the problem of storm water runoff and summarizing the Clean Water Act's permitting scheme). The discharge of pollutants without an NPDES permit, or in violation of a permit, is illegal. *Ecological Rights Found. v. Pacific Lumber Co*., 230 F.3d 1141, 1145 (9th Cir. 2000).

Much of the responsibility for administering the NPDES permitting system has been delegated to the states. *See* 33 U.S.C. § 1342(b); *see also* Cal. Water Code § 13370 (expressing California's intent to implement its own NPDES permit program). The CWA authorizes states with approved NPDES permit programs to regulate industrial storm water discharges through individual permits issued to dischargers and/or through the issuance of a single, statewide general permit applicable to all industrial storm water dischargers. 33 U.S.C. § 1342(b). Pursuant to Section 402 of the Act, the Administrator of EPA has authorized California's State Board to issue individual and general NPDES permits in California. 33 U.S.C. § 1342.

      B.        **California's General Permit for Storm Water Discharges Associated with Industrial Activities**

On July 1, 2015, pursuant to Order No. 2015-0057-DWQ the General Permit was reissued, including many of the same fundamental terms as the prior permit. Facilities discharging, or having the potential to discharge, storm water associated with industrial activities that have not obtained an individual NPDES permit must apply for coverage under the General Permit by filing a Notice of Intent to Comply ("NOI"). General Permit, Standard Condition XXI.A. Facilities must file their NOIs before the initiation of industrial operations. *Id.* Facilities must strictly comply with all of the terms and conditions of the General Permit. A violation of the General Permit is a violation of the CWA.

      C.        **R&L Lumber's Arcata Facility**

R&L Lumber operates a lumber yard in Humboldt County where it conducts various industrial activities, including the storage and treatment of logs, de-barking of logs, the storage and handling of soil amendments/compost, loading and unloading of logs and wastes associated

Notice of Violation and Intent to File Suit
September 30, 2022
Page 3

with log-processing, equipment storage and maintenance, and the storage of various industrial materials, including bark, sawdust, oil and grease, and fuel. The industrial activities at the Facility fall under Standard Industrial Classification ("SIC") Codes 2411 – ("Logging") and 2421 – ("Sawmills and Planing Mills").

R&L Lumber collects and discharges storm water associated with industrial activities at the Facility into Janes Creek, Jolly Giant Creek, McDaniel Slough, Arcata Bay, and the Pacific Ocean. Janes Creek, Jolly Giant Creek, McDaniel Slough, Arcata Bay and the Pacific Ocean are waters of the United States within the meaning of the Clean Water Act.

R&L Lumber's Facility appears to be mostly paved, and the potential for storm water runoff is high. Adjacent to the Facility's southern boundary is a roadside ditch that runs along Highway 255. R&L Lumber stores industrial materials, including sawdust, bark, and other log-processing byproducts and wastes, in the areas of its Facility that are adjacent to this storm water ditch, and in some places, R&L Lumber's industrial materials spill into the ditch. During rain events, storm water comes into contact with these industrial materials, stockpiled in the open, and storm water discharges from the Facility into the roadside ditch. Storm water that comes into contact with R&L Lumber's industrial activities and materials picks up pollutants, such as sediment, oil and grease, material that elevates chemical oxygen demand, tannins and lignens, metals such as lead, iron and aluminum, semi-volatile organic compounds such as pentachlorophenol, tetrachlorophenol, polychlorinated dibenzo dioxins and polychlorinated dibenzo furans. This ditch carries the pollutants discharged from the Facility to Janes Creek, Jolly Giant Creek, McDaniel Slough, and then eventually to Arcata Bay and the Pacific Ocean

## II.     R&L Lumber's Violations of the Act and Permit.

Based on its review of available public documents, CATs is informed and believes that R&L Lumber is in ongoing violation of the CWA and the General Permit. These violations are ongoing and continuous. Consistent with the statute of limitations applicable to citizen enforcement actions brought pursuant to the federal Clean Water Act, R&L Lumber is subject to penalties for violations of the Act since September 30, 2017.

### A.     R&L Lumber Discharges Storm Water Associated with Industrial Activity Without a NPDES Permit.

R&L Lumber owns and/or operates an industrial facility conducting log processing and milling activities. Facilities that conduct these types of activities are required to obtain General Permit coverage. 40 C.F.R. §§ 122.26(a)(1), 122.26(a)(9)(i); General Permit, Section I.A.9 and Attachment A. R&L Lumber is therefore required to obtain General Permit coverage for the Facility. The Stormwater Multiple Application & Report Track System ("SMARTS") website[1] indicates that a soil and fertilizer company operated at the same address as R&L Lumber, and was covered under the General Permit until coverage was terminated in December 2008.

---

[1] https://smarts.waterboards.ca.gov/

Notice of Violation and Intent to File Suit
September 30, 2022
Page 4

However, a review of SMARTS indicates that no facility currently has General Permit coverage to operate at 1220 5th Street, Arcata, California 95521, and R&L Lumber does not otherwise have any General Permit Coverage.  Section II.B.5 of the General Permit states that "[n]ew Dischargers registering for NOI coverage on or after Jul1, 2015 shall certify and submit [Permit Registration Documents] via SMARTS at least seven (7) days prior to commencement of industrial activities."  Based on the information available to CATs on the SMARTS website, R&L Lumber does not have General Permit coverage and R&L Lumber has been operating its Facility without a General Permit.  Each and every day R&L Lumber discharges storm water associated with industrial activities from its Facility without an NPDES permit is a separate and distinct violation of the Clean Water Act, 33 U.S.C. § 1311(a).  CATs is informed and believes that R&L Lumber has discharged storm water from the Facility in violation of the Clean Water Act, 33 U.S.C. § 1311(a), on each and every significant rain event identified in **Attachment A** to this letter.

**B.      Failure to Have Formulated an Adequate Stormwater Pollution Prevention Plan ("SWPPP")**.

R&L Lumber does not have in place an adequate Stormwater Pollution Prevention Plan. Nor does R&L Lumber have in place an adequate monitoring and reporting plan.  On multiple occasions when qualifying storm events have occurred, R&L Lumber has failed to sample and analyze the stormwater it discharges for pollutants that – based on history of use of the site and the R&L Lumber's status as a lumber mill – are likely to be present in the storm water that R&L Lumber discharges.  R&L Lumber has not implemented best conventional pollutant control technology and best available technology economically achievable to reduce or prevent pollutants in its storm water discharges from the Facility.  R&L Lumber does not have in place adequate best management practices to minimize or prevent the discharge of the pollutants identified above from its Facility during significant rain events.

**III.    Persons Responsible for the Violations.**

CATs puts R&L Lumber on notice that they are the persons and entities responsible for the violations described above.  If additional persons are subsequently identified as also being responsible for the violations set forth above, CATs puts R&L Lumber on formal notice that it intends to include those persons in this action.

**IV.    Name and Address of Noticing Parties.**

The name, address and telephone number of each of the noticing parties is as follows:

Patricia Clary, Executive Director
Californians for Alternatives to Toxics
P.O. Box 900
Eureka, CA 95502
(707) 834-4833

Notice of Violation and Intent to File Suit
September 30, 2022
Page 5

## V.    Counsel.

CATs has retained legal counsel to represent it in this matter.  Please direct all communications to:

Andrew L. Packard
William N. Carlon
Law Offices of Andrew L. Packard
245 Kentucky Street, Suite B3
Petaluma, CA 94952
(707) 782-4060
andrew@packardlawoffices.com
wncarlon@packardlawoffices.com

William Verick
Klamath Environmental Law Center
1125 16th Street, Suite 204
Arcata, CA 95521
(707) 630-5061
wverick@igc.org

## VI.    Conclusion

CATs believes this Notice of Violations and Intent to File Suit sufficiently states grounds for filing suit.  We intend to file a citizen suit under Section 505(a) of the CWA against R&L Lumber and their agents for the above-referenced violations upon the expiration of the 60-day notice period.  If you wish to pursue remedies in the absence of litigation, we suggest that you initiate those discussions within the next 20 days so that they may be completed before the end of the 60-day notice period.  We do not intend to delay the filing of a complaint in federal court if discussions are continuing when that period ends.

Sincerely,

William Carlon
Law Offices of Andrew L. Packard
Counsel for Californians for Alternatives to Toxics

Notice of Violation and Intent to File Suit
September 30, 2022
Page 6

## SERVICE LIST

## VIA CERTIFIED MAIL

Michael Regan, Administrator
U.S. Environmental Protection Agency
1200 Pennsylvania Ave., N.W.
Washington, D.C. 20460

Martha Guzman, Regional Administrator
U.S. Environmental Protection Agency, Region IX
75 Hawthorne Street
San Francisco, CA 94105

Merrick B. Garland, U.S. Attorney General
U.S. Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, DC 20530-0001

Eileen Sobeck, Executive Director
State Water Resources Control Board
P.O. Box 100
Sacramento, CA 95812

Matthias St. John, Executive Officer
North Coast Regional Water Quality Control Board
5550 Skylane Boulevard Suite A
Santa Rosa, CA 95403

**ATTACHMENT A**
**Notice of Intent to File Suit, R&L Lumber**
**Significant Rain Events,\* September 30, 2017 – September 30, 2022**

| | | | |
|---|---|---|---|
| October 20, 2017 | January 26, 2018 | September 30, 2018 | February 5, 2019 |
| November 3, 2017 | January 27, 2018 | October 2, 2018 | February 9, 2019 |
| November 4, 2017 | February 12, 2018 | October 6, 2018 | February 10, 2019 |
| November 6, 2017 | February 18, 2018 | October 24, 2018 | February 11, 2019 |
| November 9, 2017 | February 19, 2018 | October 28, 2018 | February 14, 2019 |
| November 10, 2017 | February 22, 2018 | November 22, 2018 | February 15, 2019 |
| November 11, 2017 | February 23, 2018 | November 23, 2018 | February 24, 2019 |
| November 13, 2017 | February 25, 2018 | November 24, 2018 | February 25, 2019 |
| November 14, 2017 | February 26, 2018 | November 27, 2018 | February 26, 2019 |
| November 16, 2017 | March 1, 2018 | November 28, 2018 | February 27, 2019 |
| November 17, 2017 | March 2, 2018 | November 29, 2018 | February 28, 2019 |
| November 20, 2017 | March 3, 2018 | November 30, 2018 | March 2, 2019 |
| November 21, 2017 | March 4, 2018 | December 1, 2018 | March 6, 2019 |
| November 23, 2017 | March 8, 2018 | December 2, 2018 | March 7, 2019 |
| November 24, 2017 | March 9, 2018 | December 8, 2018 | March 10, 2019 |
| November 26, 2017 | March 13, 2018 | December 10, 2018 | March 12, 2019 |
| November 27, 2017 | March 14, 2018 | December 12, 2018 | March 13, 2019 |
| November 29, 2017 | March 15, 2018 | December 15, 2018 | March 21, 2019 |
| December 3, 2017 | March 16, 2018 | December 17, 2018 | March 22, 2019 |
| December 20, 2017 | March 17, 2018 | December 19, 2018 | March 23, 2019 |
| December 28, 2017 | March 22, 2018 | December 21, 2018 | March 25, 2019 |
| December 30, 2017 | March 23, 2018 | December 24, 2018 | March 26, 2019 |
| January 4, 2018 | March 24, 2018 | December 25, 2018 | March 27, 2019 |
| January 5, 2018 | March 25, 2018 | December 30, 2018 | March 28, 2019 |
| January 6, 2018 | April 6, 2018 | January 6, 2019 | March 29, 2019 |
| January 8, 2018 | April 7, 2018 | January 7, 2019 | April 3, 2019 |
| January 9, 2018 | April 8, 2018 | January 8, 2019 | April 5, 2019 |
| January 10, 2018 | April 10, 2018 | January 9, 2019 | April 6, 2019 |
| January 11, 2018 | April 11, 2018 | January 10, 2019 | April 8, 2019 |
| January 12, 2018 | April 12, 2018 | January 17, 2019 | April 9, 2019 |
| January 16, 2018 | April 13, 2018 | January 18, 2019 | April 16, 2019 |
| January 18, 2018 | April 16, 2018 | January 19, 2019 | May 16, 2019 |
| January 19, 2018 | April 28, 2018 | January 20, 2019 | May 17, 2019 |
| January 20, 2018 | April 29, 2018 | January 21, 2019 | May 19, 2019 |
| January 22, 2018 | May 9, 2018 | February 2, 2019 | May 21, 2019 |
| January 24, 2018 | May 26, 2018 | February 3, 2019 | May 22, 2019 |
| January 25, 2018 | June 9, 2018 | February 4, 2019 | May 26, 2019 |

**ATTACHMENT A**
**Notice of Intent to File Suit, R&L Lumber**
**Significant Rain Events,* September 30, 2017 – September 30, 2022**

| | | | |
|---|---|---|---|
| August 10, 2019 | October 17, 2019 | January 26, 2020 | November 14, 2020 |
| September 16, 2019 | October 18, 2019 | January 27, 2020 | November 15, 2020 |
| September 18, 2019 | October 19, 2019 | January 28, 2020 | November 17, 2020 |
| September 19, 2019 | November 19, 2019 | January 30, 2020 | November 18, 2020 |
| September 23, 2019 | November 27, 2019 | February 2, 2020 | November 19, 2020 |
| September 30, 2019 | November 28, 2019 | February 3, 2020 | November 25, 2020 |
| October 17, 2019 | November 30, 2019 | February 16, 2020 | December 6, 2020 |
| October 18, 2019 | December 1, 2019 | February 17, 2020 | December 12, 2020 |
| October 19, 2019 | December 2, 2019 | March 7, 2020 | December 13, 2020 |
| November 19, 2019 | December 3, 2019 | March 14, 2020 | December 14, 2020 |
| November 27, 2019 | December 7, 2019 | March 15, 2020 | December 15, 2020 |
| November 28, 2019 | December 8, 2019 | March 17, 2020 | December 16, 2020 |
| November 30, 2019 | December 12, 2019 | March 18, 2020 | December 17, 2020 |
| December 1, 2019 | December 13, 2019 | March 24, 2020 | December 20, 2020 |
| December 2, 2019 | December 14, 2019 | March 25, 2020 | December 22, 2020 |
| December 3, 2019 | December 15, 2019 | March 30, 2020 | December 26, 2020 |
| December 7, 2019 | December 19, 2019 | March 31, 2020 | December 31, 2020 |
| December 8, 2019 | December 20, 2019 | April 4, 2020 | January 2, 2021 |
| December 12, 2019 | December 22, 2019 | April 5, 2020 | January 3, 2021 |
| December 13, 2019 | December 23, 2019 | April 6, 2020 | January 4, 2021 |
| December 14, 2019 | December 25, 2019 | April 23, 2020 | January 5, 2021 |
| December 15, 2019 | December 30, 2019 | May 3, 2020 | January 6, 2021 |
| December 19, 2019 | January 1, 2020 | May 12, 2020 | January 8, 2021 |
| December 20, 2019 | January 2, 2020 | May 14, 2020 | January 10, 2021 |
| December 22, 2019 | January 4, 2020 | May 15, 2020 | January 12, 2021 |
| December 23, 2019 | January 8, 2020 | May 17, 2020 | January 13, 2021 |
| December 25, 2019 | January 9, 2020 | May 18, 2020 | January 22, 2021 |
| December 30, 2019 | January 11, 2020 | May 19, 2020 | January 25, 2021 |
| January 1, 2020 | January 12, 2020 | May 30, 2020 | January 26, 2021 |
| January 2, 2020 | January 13, 2020 | May 31, 2020 | January 27, 2021 |
| January 4, 2020 | January 14, 2020 | June 7, 2020 | January 28, 2021 |
| August 10, 2019 | January 15, 2020 | June 16, 2020 | January 29, 2021 |
| September 16, 2019 | January 16, 2020 | September 18, 2020 | January 31, 2021 |
| September 18, 2019 | January 17, 2020 | September 24, 2020 | February 1, 2021 |
| September 19, 2019 | January 21, 2020 | October 11, 2020 | February 2, 2021 |
| September 23, 2019 | January 24, 2020 | November 6, 2020 | February 3, 2021 |
| September 30, 2019 | January 25, 2020 | November 7, 2020 | February 12, 2021 |

**ATTACHMENT A**
**Notice of Intent to File Suit, R&L Lumber**
**Significant Rain Events,* September 30, 2017 – September 30, 2022**

| | | |
|---|---|---|
| February 13, 2021 | November 9, 2021 | April 22, 2022 |
| February 14, 2021 | November 15, 2021 | April 30, 2022 |
| February 15, 2021 | November 16, 2021 | May 2, 2022 |
| February 16, 2021 | December 7, 2021 | May 5, 2022 |
| February 18, 2021 | December 12, 2021 | May 6, 2022 |
| February 19, 2021 | December 13, 2021 | May 8, 2022 |
| February 20, 2021 | December 14, 2021 | May 9, 2022 |
| March 6, 2021 | December 16, 2021 | May 14, 2022 |
| March 7, 2021 | December 19, 2021 | May 25, 2022 |
| March 9, 2021 | December 22, 2021 | May 29, 2022 |
| March 10, 2021 | December 23, 2021 | June 3, 2022 |
| March 15, 2021 | December 24, 2021 | June 4, 2022 |
| March 19, 2021 | December 25, 2021 | June 5, 2022 |
| March 20, 2021 | December 26, 2021 | June 12, 2022 |
| April 25, 2021 | December 27, 2021 | June 28, 2022 |
| April 26, 2021 | December 29, 2021 | July 4, 2022 |
| May 7, 2021 | December 31, 2021 | July 5, 2022 |
| May 25, 2021 | January 4, 2022 | July 6, 2022 |
| June 12, 2021 | January 5, 2022 | August 3, 2022 |
| June 14, 2021 | January 6, 2022 | August 18, 2022 |
| September 18, 2021 | January 7, 2022 | September 7, 2022 |
| September 19, 2021 | January 15, 2022 | September 18, 2022 |
| September 28, 2021 | February 22, 2022 | September 19, 2022 |
| October 18, 2021 | March 15, 2022 | |
| October 20, 2021 | March 19, 2022 | |
| October 22, 2021 | March 20, 2022 | |
| October 23, 2021 | April 4, 2022 | |
| October 24, 2021 | April 5, 2022 | |
| October 25, 2021 | April 9, 2022 | |
| October 26, 2021 | April 11, 2022 | |
| October 27, 2021 | April 12, 2022 | |
| October 31, 2021 | April 13, 2022 | |
| November 1, 2021 | April 14, 2022 | |
| November 2, 2021 | April 16, 2022 | |
| November 4, 2021 | April 19, 2022 | |
| November 5, 2021 | April 20, 2022 | |
| November 6, 2021 | April 21, 2022 | |

# EXHIBIT 2



**EXHIBIT 3**




# North Coast Regional Water Quality Control Board

## INSPECTION MEMO

**Name and Location of Facility Inspected**
R&L Lumber Co.,
1220 5th Street
Arcata, Humboldt County

**Industrial General Permit**
**WDID #:** N/A (Non-filer)

**Inspection Date**
November 2, 2022

**Inspection Time**
11:00 am

**Names & Titles of Site Representative**
John (Facility staff)

**Consent for inspection Provided?**
Yes

**Notified of Inspection?**
No, conducted an unannounced inspection for non-filer identification

**Inspector Name & Affiliation**
Farzad Kasmaei, Regional Water Board

**Weather Conditions at the Time of the Inspection:**
Wet weather

**Inspection Memo Prepared By:**
Farzad Kasmaei

Industrial General Permit No. CAS000001

R&L Lumber Co.
Inspection Date: 11/02/2022


**Photos:**



Picture 1- View of the log yard after storm event. Picture taken by Farzad Kasmaei.

Industrial General Permit No. CAS000001

R&L Lumber Co.
Inspection Date: 11/02/2022



Picture 2- View of log piles stored outside within the facility's yard exposed to rain.
Picture taken by Farzad Kasmaei.

Industrial General Permit No. CAS000001

R&L Lumber Co.
Inspection Date: 11/02/2022



Picture 3- View of the stormwater inlet that receives facility's runoff from the log piles areas. Picture taken by Farzad Kasmaei.



Picture 4- View of the finish products stored along the facility's boundary/roadside vegetated swale. K-rail and fiber rolls are installed along the swale as a perimeter control BMP. Picture taken by Farzad Kasmaei.

Industrial General Permit No. CAS000001

R&L Lumber Co.
Inspection Date: 11/02/2022

Summary: Regional Water Board (RWB) staff arrived at 11:00 am to conduct an unannounced inspection for non-filer identification. Per the Facility's staff (John), R&L Lumber operates part of the property as a renter. Also, he informed me that the Industrial General Permit (IGP) enrollment was in progress. He called David, Facility's manager, during the inspection to confirm whether the IGP enrollment was complete.

Per David, the site was recently inspected by SHN (stormwater consultant) to prepare and submit the Permit Registration Documents (PRDs). I reminded the Discharger that they were in violation of the IGP requirements for failure to obtain the permit coverage, directed them to obtain the coverage ASAP to avoid further violations.

After inspection, I received a message from the Discharger's consultant stating that it is anticipated to complete the IGP enrollment by the end of November 2022.