ANDREW L. PACKARD (State Bar No. 168690)
WILLIAM N. CARLON (State Bar No. 305739)
Law Offices of Andrew L. Packard
245 Kentucky Street, Suite B3
Petaluma, CA 94952
Tel: (707) 782-4060
Fax: (707) 782-4062
E-mail: andrew@packardlawoffices.com
       wncarlon@packardlawoffices.com

WILLIAM VERICK (State Bar No. 140972)
Klamath Environmental Law Center
1125 16th Street, Suite 204
Arcata, CA 95521
Tel: (707) 630-5061
E-mail: wverick@igc.org

Attorneys for Plaintiff
CALIFORNIANS FOR
ALTERNATIVES TO TOXICS

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIANS FOR ALTERNATIVES TO TOXICS, a non-profit corporation,<br><br>Plaintiff,<br><br>vs.<br><br>R&L LUMBER COMPANY LLC, et al.,<br><br>Defendants. | Case No. 3:22-cv-07511-JSC<br><br>**NOTICE OF COMPLETED AGENCY REVIEW; REQUEST TO ENTER [PROPOSED] CONSENT DECREE**<br><br>**(Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 to 1387)** |

TO THE CLERK OF THE COURT, ANY INTERESTED PARTIES, AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that United States Department of Justice and the national and Region IX offices of the United States Environmental Protection Agency ("federal agencies") have now completed their review of the Proposed Consent Decree settling this case. *See* 33 U.S.C. § 1365(c), requiring that "[n]o consent judgment shall be entered in an action in which the United States is not a party prior to 45-days following the receipt of a copy of the proposed consent judgment by the Attorney General and the Administrator;" and 40 C.F.R. § 135.5,

requiring the parties to provide notice to the court of the 45-day agency review period under 33 U.S.C. § 1365(c).

PLEASE TAKE FURTHER NOTICE that the federal agencies' August 31, 2023 letter confirming that they do not object to the entry of the Proposed Consent Decree is attached hereto as **Exhibit 1**;

NOW THEREFORE, Plaintiff Californians for Alternatives to Toxics respectfully requests that the Court execute and enter the Proposed Consent Decree, attached hereto as **Exhibit 2**, and dismiss the claims with prejudice, except to the extent provided for in the Proposed Consent Decree to interpret, modify or enforce the Proposed Consent Decree.


Date:  September 5, 2023          LAW OFFICES OF ANDREW L. PACKARD


_____
William N. Carlon
Attorneys for Plaintiff
Californians for Alternatives to Toxics

# EXHIBIT 1



**U.S. Department of Justice**

Environment and Natural Resources Division

90-1-24-06207

*Law and Policy Section*                                    *Telephone (202) 514-1442*
*P.O. Box 7415*                                             *Facsimile (202) 514-4231*
*Washington, DC  20044-7415*

August 31, 2023

PROVIDED TO COUNSEL OF RECORD
TO SUBMIT TO THE COURT VIA ECF

Clerk's Office
United States District Court
Northern District of California
San Francisco Courthouse
450 Golden Gate Avenue
San Francisco, CA 94102

   Re: *Californians for Alternatives to Toxics v. R&L Lumber Company LLC et al.* (N.D.
      Cal.), Case No. 3:22-cv-07511

Dear Clerk of Court:

   I am writing to notify you that the United States has reviewed the proposed consent
judgment in this action and does not object to its entry by this Court.

   On July 18, 2023, the Citizen Suit Coordinator for the Department of Justice received a
copy of the proposed consent judgment in the above-referenced case for review pursuant to the
Clean Water Act, 33 U.S.C. § 1365(c)(3).[1]  This provision provides, in relevant part:

> No consent judgment shall be entered in an action in which the United States is
> not a party prior to 45 days following the receipt of a copy of the proposed
> consent judgment by the Attorney General and the Administrator.

---

[1] The term "consent judgment" in the Clean Water Act citizen suit provisions has a broad
meaning and encompasses all instruments entered with the consent of the parties that have the
effect of resolving any portion of the case.  For example, a document stipulating to dismissal of a
case of any part thereof is within the scope of this language.  Such documents and any associated
instruments must be submitted to the United States and the court for review, notwithstanding any
provisions purporting to maintain the confidentiality of such materials.  The Department
monitors citizen suit litigation to review compliance with this requirement.

*See also* 40 C.F.R. § 135.5 (service on Citizen Suit Coordinator in the U.S. Department of Justice).  A settlement that does not undergo this federal review process is at risk of being void.

In its review, the United States seeks to ensure that the proposed consent judgment complies with the requirements of the relevant statute and is consistent with its purposes.  *See Local 93, Int'l Ass'n of Firefighters v. City of Cleveland*, 478 U.S. 501, 525-26 (1986) (a consent decree should conform with and further the objectives of the law upon which the complaint was based).  For example, if the defendant has been out of compliance with statutory or permit requirements, the proposed consent judgment should require the defendant to come into prompt compliance and should include a civil penalty, enforceable remedies, injunctive relief, and/or an environmentally beneficial project payment sufficient to deter future violations, or combinations of the above.

In this case, the proposed consent decree requires, *inter alia*, that R&L Lumber Company LLC, Justin Lena, and Ubi Ruiz submit a payment to a non-party organization to be used for projects to improve water quality in the Arcata/Humboldt Bay watershed. Where a consent judgment provides for the payment of sums to a third party that is to undertake an environmentally beneficial project and/or acquire a property interest that will have environmental benefits, the United States typically requests that the third party provide a letter to the Court and to the United States representing that it is a 501(c)(3) tax exempt entity and that it: (1) has read the proposed consent judgment; (2) will spend any monies it receives under the proposed judgment for the purposes specified in the judgment; (3) will not use any money received under the proposed consent judgment for political lobbying activities; and (4) will submit to the Court, the United States, and the parties a letter describing how the funds were spent.  In a letter attached as Exhibit A, the intended recipient of the funds confirmed that any funds received as a result of the proposed consent decree would be used solely for the purpose outlined in the consent decree and no portion of the funds would be used for political lobbying activities.  The United States believes that this letter will help to ensure that any monies expended under the consent judgment will be used in a manner that furthers the purposes of the Clean Water Act and that is consistent with the law and the public interest.

Given the facts of this case, the United States has no objection to the proposed consent judgment.  The fact that we do not have a basis to object to this consent judgment does not imply approval of this instrument.

The United States affirms for the record that it is not bound by this settlement.  *See, e.g., Hathorn v. Lovorn*, 457 U.S. 255, 268 n.23 (1982) (Attorney General is not bound by cases to which he was not a party); *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found. Inc.*, 484 U.S. 49, 60 (1987) (explaining that citizen suits are intended to "supplement rather than supplant governmental action"); *Sierra Club v. Electronic Controls Design*, 909 F.2d 1350, 1356 n.8 (9th Cir. 1990) (explaining that the United States is not bound by citizen suit settlements, and may "bring its own enforcement action at any time"); 131 Cong. Rec. S15,633 (June 13, 1985) (statement of Senator Chafee, on Clean Water Act section 505(c)(3), confirming that the United States is not bound by settlements when it is not a party).  The United States also notes that, if the parties subsequently propose to modify any final consent judgment entered in this case, the

parties should so notify the United States, and provide a copy of the proposed modifications, forty-five days before the Court enters any such modifications.  *See* 33 U.S.C. §1365(c)(3).

　　　　　We appreciate the attention of the Court.  Please contact the undersigned at 202-305-0472 if you have any questions.


　　　　　　　　　　　　　　　　Sincerely,

　　　　　　　　　　　　　　　　*/s/ Steven Barnett*

　　　　　　　　　　　　　　　　‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾
　　　　　　　　　　　　　　　　Steven Barnett, Attorney
　　　　　　　　　　　　　　　　U.S. Department of Justice
　　　　　　　　　　　　　　　　Environment and Natural Resources Division
　　　　　　　　　　　　　　　　Law and Policy Section
　　　　　　　　　　　　　　　　P.O. Box 7415
　　　　　　　　　　　　　　　　Washington, D.C.  20044-4390

cc:　　　Counsel on Record via ECF

# EXHIBIT A



201 4TH STREET, SUITE 102, OAKLAND, CA 94607
ROSE@ROSEFDN.ORG

WWW.ROSEFDN.ORG

OFFICE: 510.658.0702
FAX: 510.658.0732

July 20, 2023

Byrn Bowen, Paralegal Specialist
United States Department of Justice
Environment & Natural Resources Division
Law and Policy Section
P.O. Box 7415
Ben Franklin Station
Washington, D.C. 20044-7415

Re: Californians for Alternatives to Toxics v. R&L Lumber CO. LLC et al. (Case 3:22-cv-07511-JSC)

Dear Ms. Bowen,

This letter is intended to provide assurance that I have received the Consent Decree between the above parties, and that I am authorized by my Executive Director and Board of Directors to make the following binding commitments on behalf of the Rose Foundation.

1) I understand that the Rose Foundation should receive funds from Defendants as specified in the Consent Decree.
2) The Rose Foundation shall only use these Defendant funds for projects to improve water quality in the Arcata/Humboldt Bay watershed.
3) After funds are dispersed, the Rose Foundation shall send a report to the Justice Department and the Settling Parties setting forth the recipient and purpose of the funds and demonstrating conformance with the nexus of the Consent Decree.

**Rose Foundation for Communities and the Environment**
The Rose Foundation is a 501(c)(3) public charity (tax ID#94-3179772). Its mission is to support grassroots initiatives to inspire community action to protect the environment, consumers and public health. To fulfill this mission, the Rose Foundation conducts the following activities:

● Raise money to award as grants to qualified non-profit organizations conducting charitable operations. The Foundation does not support political lobbying activities prohibited by Section 501(c)(3) of the IRS Code.

● Work directly in schools and in the community to encourage environmental stewardship and civic participation.

- Help government efforts to control pollution and protect the environment by encouraging community engagement in local, state and federal research and policy development.

Within this broad range of activities, all the Rose Foundation's work revolves around one or more of the following strategic themes:

- Build and maintain a bridge between the community and organized philanthropy.
- Protect the natural environment, public health, and community and consumer rights.
- Promote collaboration between labor, environmental, business, consumer and social interests.
- Cultivate a new generation of environmental stewards and social policy leaders.
- Respect the inalienable rights protected by our nation's constitution, and the essential human rights to clean air, clean water, and individual dignity and privacy.

The Rose Foundation is governed by a Board of Directors.  Grant applicants are required to submit written proposals, which must include at a minimum specific information about the goals, activities and projected outcomes of the proposed project, background about the charitable applicant, budget information, and a specific funding request. The Foundation may require additional information in order to fully evaluate the application. Applications are first screened by Foundation staff. Staff then make recommendations to the Foundation Board for action. The Foundation requires all projects to submit written reports within one year of receipt of the grant award describing work conducted under the grant, thereby providing an accountability mechanism over funds awarded. Annual audits by the certified public accounting firm Maze and Associates are posted on the Foundation's website www.rosefdn.org.

I hope this provides you with the information you require.  Please do not hesitate to contact me with any questions, or for additional information at (510) 658-0702 or jisaacs@rosefdn.org.

Sincerely,

Jodene Isaacs,
Mitigation Funds Director

# EXHIBIT 2

ANDREW L. PACKARD (State Bar No. 168690)
WILLIAM N. CARLON (State Bar No. 305739)
Law Offices of Andrew L. Packard
245 Kentucky Street, Suite B3
Petaluma, CA 94952
Tel: (707) 782-4060
Fax: (707) 782-4062
E-mail: andrew@packardlawoffices.com
        wncarlon@packardlawoffices.com

WILLIAM VERICK (State Bar No. 140972)
Klamath Environmental Law Center
1125 16th Street, Suite 204
Arcata, CA 95521
Tel: (707) 630-5061
Email: wverick@igc.org

Attorneys for Plaintiff
CALIFORNIANS FOR ALTERNATIVES TO TOXICS

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIANS FOR ALTERNATIVES TO TOXICS, a non-profit corporation, <br><br> Plaintiff, <br><br> vs. <br><br> R&L LUMBER COMPANY LLC, JUSTIN LENA, AND UBI RUIZ, <br><br> Defendants. | Case No. 3:22-CV-07511-JSC <br><br> **[PROPOSED] CONSENT DECREE** <br><br> **(Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 to 1387)** |

**WHEREAS**, Plaintiff Californians for Alternatives to Toxics (hereinafter "CAT") is a non-profit public benefit corporation dedicated to the preservation, protection, and defense of the environment, wildlife, and natural resources of California's waters;

**WHEREAS**, Defendants R&L LUMBER COMPANY LLC, JUSTIN LENA, and UBI RUIZ (collectively hereinafter "Defendants") own and/or operate a lumber yard in Arcata, California (hereinafter referred to as the "Facility");

**WHEREAS**, Defendants' primary industrial activities at the Facility include, but are

not limited to, the storage and treatment of logs, de-barking of logs, the storage and handling of soil amendments/compost, loading and unloading of logs and wastes associated with log-processing, equipment storage and maintenance, and the storage of various industrial materials, including bark, sawdust, oil and grease, and fuel (the industrial activities at the Facility fall under Standard Industrial Classification Code 2421 – Sawmills and Planing Mills, General);

**WHEREAS,** a site map of the Facility is attached hereto as **Exhibit A**, and incorporated herein by reference;

**WHEREAS,** CAT and Defendants collectively shall be referred to as the "Parties;"

**WHEREAS,** CAT has alleged that the Defendants' Facility collects and discharges storm water into Janes Creek, Jolly Giant Creek, McDaniel Slough, Arcata Bay, and ultimately the Pacific Ocean;

**WHEREAS,** storm water discharges associated with industrial activity are regulated pursuant to the National Pollutant Discharge Elimination System ("NPDES"), General Permit No. CAS000001, and State Water Resources Control Board ("State Board") Water Quality Order No. 14-57-DWQ, issued pursuant to Section 402(p) of the Clean Water Act ("Act"), 33 U.S.C. §1342(p), (hereinafter "General Permit");

**WHEREAS,** on September 30, 2022 Plaintiff provided notice of Defendants' alleged violations of the Act ("Clean Water Act Notice Letter"), and of its intention to file suit against Defendants to the Administrator of the United States Environmental Protection Agency ("EPA"); the Administrator of EPA Region IX; the U.S. Attorney General; the Executive Director of the State Board; the Executive Officer of the Regional Water Quality Control Board, North Coast Region ("Regional Board"); and to Defendants, as required by the Act, 33 U.S.C. § 1365(b)(1)(A) (a true and correct copy of CAT's Clean Water Act Notice Letter is attached hereto as **Exhibit B** and incorporated herein by reference);

**WHEREAS,** on November 30, 2022, CAT filed a complaint against Defendants in the United States District Court, Northern District of California (this matter is hereinafter referred to as "the Action");

**WHEREAS**, on December 30, 2022 Plaintiff provided notice of Defendants' additional alleged violations of the Act ("Second Clean Water Act Notice Letter"), and of its intention to file suit against Defendants to the Administrator of the United States Environmental Protection Agency ("EPA"); the Administrator of EPA Region IX; the U.S. Attorney General; the Executive Director of the State Board; the Executive Officer of the Regional Water Quality Control Board, North Coast Region ("Regional Board"); and to Defendants, as required by the Act, 33 U.S.C. § 1365(b)(1)(A) (a true and correct copy of CAT's supplemental Clean Water Act Notice Letter is attached hereto as **Exhibit C** and incorporated herein by reference);

**WHEREAS**, on March 1, 2023, CAT filed a supplemental complaint against Defendants in the Action);

**WHEREAS**, the parties agree that Defendants entering into this Consent Decree ("Decree") is not any admission of liability by Defendants regarding the claims made by Plaintiff in the Action, and compliance with this Decree shall not be deemed to be compliance with the General Permit or the Clean Water Act;

**WHEREAS**, Defendants deny the occurrence of the violations alleged in the Clean Water Act Notice Letters and maintain that they have complied at all times with the provisions of the General Permit and the Clean Water Act;

**WHEREAS**, the Parties agree that it is in their mutual interest to resolve this matter as to all entities and persons named in the Clean Water Act Notice Letters without litigation and enter into this Decree;

**WHEREAS**, within five (5) calendar days of mutual execution, this Decree shall be submitted to the United States Department of Justice for the 45-day statutory review period, pursuant to 33 U.S.C. § 1365(c);

**AND WHEREAS**, within ten (10) calendar days of expiration of the statutory review period, or the earlier receipt of non-objection from the United States Department of Justice, Plaintiff shall file with the Court a Request for Entry of Consent Decree (the date of entry of the Consent Decree shall be referred to herein as the "Court Entry Date").

**NOW THEREFORE IT IS HEREBY STIPULATED BETWEEN THE PARTIES, AND ORDERED AND DECREED BY THE COURT AS FOLLOWS:**

For the purposes of this Decree, the Parties agree that:

(a) the Court has jurisdiction over the subject matter of this action pursuant to Section 505(a)(1)(A) of the Clean Water Act, 33 U.S.C. § 1365(a)(1)(A);

(b) venue is appropriate in the United States District Court for the Northern District of California pursuant to Section 505(c)(1) of the Clean Water Act, 33 U.S.C. § 1365(c)(1), because the Facility at which the alleged violations took place is located within this District;

(c) the Complaint states claims upon which relief may be granted against Defendants pursuant to Section 505 of the Clean Water Act, 33 U.S.C. § 1365;

(d) Plaintiff has standing to bring this action; and,

(e) the Court shall retain jurisdiction over this matter for purposes of interpreting, modifying, or enforcing the terms of this Decree for the life of the Decree, or as long thereafter as is necessary for the Court to resolve any motion to enforce this Decree.

## I. COMMITMENTS OF DEFENDANTS

1. **Compliance with General Permit and the Clean Water Act.** Throughout the term of this Decree, Defendants shall comply with all the requirements of the General Permit and the Clean Water Act, subject to any defenses available under the law.

2. **Implementation of Specific Storm Water Best Management Practices.** Unless otherwise indicated below, on or before **September 1, 2023**, Defendants shall complete the implementation and incorporation into the Facility's Storm Water Pollution Prevention Plan ("SWPPP") of the following storm water source control measures and Best Management Practices ("BMPs") at the Facility:

(a) *Mandatory Minimum Best Management Practices.* Defendants shall implement all mandatory minimum BMPs set forth in Section X.H of the General Permit;

(b)        *Facility Regrading.*  The Facility shall be regraded to direct all storm water flows to the current discharge point in the SW corner of the yard identified as DA-2.

(c)        *Reconstruction of DA-2.*  All Facility storm water shall be directed through a series of bioswales and other retention features that will be constructed by Defendants, consistent with the volumetric-based design storm standards set forth in Section X.H.6.a.i of the General Permit (an 85th percentile 24-hour storm event, based on historical records) ("Reconstructed Stormwater Discharge Feature"). The approximate future location of the Reconstructed Stormwater Discharge Feature is shown in Exhibit A, attached hereto. The Reconstructed Stormwater Discharge Feature shall be designed to meet the design storm standards set forth in Section X.H.6.a.i of the General Permit.

(d)        *Elimination/Reduction of Storm Water Run-On.*  A perimeter berm or trench drain shall be installed around the Facility where necessary to eliminate, or reduce as much as feasible, run-on from adjacent areas, including areas to the north and west of the Facility. The approximate future location of the perimeter berm is shown in Exhibit A, attached hereto.

(e)        *Facility Mapping.*  On or before **September 1, 2023**, Defendants agree to revise the Site Map appended to the current SWPPPs to comply with all of the requirements in Section X.E.1-3 of the General Permit and for use in documenting this Decree.

(f)        *Employee Training Program.* Consistent with Section X.D.1 and X.H.1.f of the General Permit, Defendants shall establish a Storm Water Pollution Prevention Team ("SWPPT") and shall ensure that all employees implementing the various compliance activities under the General Permit are properly trained to implement the requirements of the General Permit. The requirements for the SWPPT and the Employee Training Program are discussed in detail in Exhibit E, which is incorporated herein by reference.

**3.        SWPPP Amendments.**  On or before **September 1, 2023,** Defendants shall amend the Facility SWPPP to incorporate all of the relevant requirements of this Decree and the General Permit.  These revisions shall reflect all then-current site conditions and practices and identify potential contaminants of concern, identify the location of all pervious and

- 5 -

impervious areas, drop inlets, BMPs, and storm water flow vectors.  These revisions shall also provide for required data logging; weekly monitoring and maintenance of all Facility collection and discharge points during the Wet Season; and the twice-annual storm water management training for Facility employees referenced above.

4.      **Sampling Frequency.**   For the 2023-2024 and 2024-2025 reporting years ending June 30th (2024 and 2025), Defendants shall collect and analyze samples at the Facility from three (3) Qualifying Storm Events[1] ("QSEs") within the first half of each reporting year (July 1 to December 31), and three (3) QSEs within the second half of each reporting year (January 1 to June 30).  The storm water sample results shall be compared with the values set forth in **Exhibit D**, attached hereto, and incorporated herein by reference.  If the results of any such samples exceed the parameter values set forth in **Exhibit D**, Defendants shall comply with the "Action Memorandum" requirements set forth below.

5.      **Sampling Parameters.**   All six (6) samples in each reporting year shall be analyzed for each of the constituents listed in **Exhibit D**, including TMDLs, as applicable, by a laboratory accredited by the State of California.  All samples collected from the Facility shall be delivered to the laboratory as soon as possible to ensure that sample "hold time" is not exceeded.  Analytical methods used by the laboratory shall comply with General Permit requirements in regards to both test method and detection limit.  See General Permit, Table 2, at 43.  Sampling results shall be provided to CAT within ten (10) days of Defendants' receipt of the laboratory report from each sampling event, pursuant to the Notice provisions below.

6.      **"Action Memorandum" Trigger; CAT's Review Of "Action Memorandum"; Meet-and-Confer.**  If any sample taken during the two (2) reporting years referenced in Paragraph 4 above exceeds the Evaluation Levels set forth in **Exhibit D**, or if Defendants fail to collect and analyze samples from six (6) QSEs, then Defendants shall

_____

[1] A Qualifying Storm Event (QSE) is defined in the General Permit as a precipitation event that: (a) produces a discharge from at least one drainage area; and (b) is preceded by 48 hours with no discharge from any drainage area.  *See* General Permit, Section XI(b)(1).

prepare a written statement discussing the exceedance(s) and/or failure to collect and analyze samples from six (6) storm events, the possible cause and/or source of the exceedance(s), and additional measures that will be taken to address and eliminate future exceedances and/or failures to collect required samples ("Action Memorandum").

If required, the Action Memorandum shall be provided to CAT not later than 15 days following the conclusion of each reporting year, on July 15, 2024 and July 15, 2025. Such additional measures may include, but are not limited to, further material improvements to the storm water collection and discharge system, changing the type and frequency of Facility sweeping, changing the type and extent of storm water filtration media or modifying other industrial activities or management practices at the Facility. Such additional measures, to the extent feasible, shall be implemented immediately and in no event later than sixty (60) days after the due date of the Action Memorandum. Within seven (7) days of implementation, the Facility SWPPP shall be amended to include all additional BMP measures designated in the Action Memorandum. CAT may review and comment on an Action Memorandum and suggest any additional pollution prevention measures it believes are appropriate; however, CAT's failure to do so shall not be deemed to constitute agreement with the proposals set forth in the Action Memorandum. Upon request by CAT, Defendants agree to meet and confer in good faith (at the Facility, if requested by Plaintiff) regarding the contents and sufficiency of the Action Memorandum.

7.     **Inspections During The Term Of This Decree.**  In addition to any site inspections conducted as part of the settlement process and the meet-and-confer process concerning an Action Memorandum as set forth above, Defendants shall permit representatives of CAT to perform up to three (3) physical inspections of each Facility during the term of this Decree. These inspections shall be performed by CAT's counsel and consultants and may include sampling, photographing, and/or videotaping and CAT shall provide Defendants with a copy of all sampling reports, photographs and/or video. CAT shall provide at least seventy-two (72) hours advance notice of such physical inspection, except that Defendants shall have the right to deny access if circumstances would make the inspection

unduly burdensome and pose significant interference with business operations or any party/attorney, or the safety of individuals.  In such case, Defendants shall specify at least three (3) dates within the two (2) weeks thereafter upon which a physical inspection by CAT may proceed.  Defendants shall not make any alterations to Facility conditions during the period between receiving CATS' initial seventy-two (72) hour advance notice and the start of CAT's inspection that Defendants would not otherwise have made but for receiving notice of CAT's request to conduct a physical inspection of the Facility, excepting any actions taken in compliance with any applicable laws or regulations.  Nothing herein shall be construed to prevent Defendants from continuing to implement any BMPs identified in the SWPPP during the period prior to an inspection by CATS or at any time.

**8.     Communications To/From Regional and State Water Boards.**  During the term of this Decree, Defendants shall provide CAT with courtesy copies of all documents submitted to, or received from, the Regional Water Board or the State Water Board concerning storm water discharges from the Facilities, including, but not limited to, all documents and reports submitted to the Regional Water Board and/or State Water Board as required by the current General Permit.  Such documents and reports shall be provided to CATS via email pursuant to the Notice provisions set forth below and contemporaneously with Defendants' submission(s) to, or, receipt from, such agencies.

**9.     SWPPP Amendments.**  Pursuant to the Notice provisions set forth below, Defendants shall provide CAT with a copy of any amendments to the Facility SWPPP made during the term of the Decree within fourteen (14) days of such amendment.

## II.     MITIGATION, COMPLIANCE MONITORING, AND FEES AND COSTS

**10.     Mitigation Payment In Lieu Of Civil Penalties Under the Clean Water Act.**  As mitigation to address any potential harms from the Clean Water Act violations alleged in the Action, Defendants agree to pay the sum of $50,000, which funds Plaintiff's counsel shall forward to the Rose Foundation for Communities and the Environment for projects to improve water quality in the Arcata/Humboldt Bay watershed.

**11.     Compliance Monitoring Funding.**  To defray CAT's reasonable

investigative, expert, consultant and attorneys' fees and costs associated with monitoring Defendants' compliance with this Decree, Defendants agree to pay the sum of $15,000 to a compliance monitoring fund maintained by counsel for CAT as described below.  Compliance monitoring activities may include, but shall not be limited to, site inspections, review of water quality sampling reports, review of annual reports, and discussions with Defendant concerning the ERA reporting requirements of the General Permit.  Compliance monitoring funds shall not be used to pay attorneys' fees and costs associated with negotiating any amendments to this Decree; the recovery of any such fees or costs shall be addressed in any amendment to this Decree.

**12.     Reimbursement of Fees & Costs.**  Defendants agree to reimburse CATS in the amount of $85,000 to defray CATS' reasonable investigative, expert, consultant, and attorneys' fees and costs, and all other costs incurred as a result of investigating the activities at the Facility, bringing the action, and negotiating a resolution of this action in the public interest.  Payment shall be made payable to the "Law Offices of Andrew L. Packard Attorney-Client Trust Account" and remitted to Plaintiff's counsel at the Notice address provided herein within ten (10) days after the Court Entry Date.

**13.     Payment Schedule; Liability.**  Pursuant to Paragraphs 10 – 12, Defendants are jointly and severally liable in the total amount of $150,000 to Plaintiff, payable to the Law Offices of Andrew L. Packard Attorney Client Trust Account.  Defendants shall remit these funds as follows:

(a) $50,000 within ten (10) days of the Court Entry Date;

(b) $25,000 on or before December 15, 2023;

(c) $25,000 on or before March 15, 2024;

(d) $25,000 on or before June 15, 2024; and,

(e) $25,000 on or before September 15, 2024.

In the event that any payment owed by Defendants under this Consent Decree is not remitted or post-marked on or before its due date, Defendants shall be deemed to be in default of their obligations under this Consent Decree.  Plaintiff shall provide written notice to Defendants of

any default; if Defendant fails to remedy the default within five (5) business days of such notice, then all future payments due hereunder shall become immediately due and payable, with the prevailing federal funds rate applying to all interest accruing on unpaid balances due hereunder, beginning on the due date of the funds in default.

## III.   DISPUTE RESOLUTION AND ENFORCEMENT OF CONSENT DECREE

**14.**     If a dispute under this Decree arises, or either Party believes that a breach of this Decree has occurred, the Parties shall meet and confer within seven (7) days of receiving written notification from the other Party of a request for a meeting to determine whether a breach has occurred and to develop a mutually agreed upon plan, including implementation dates, to resolve the dispute.  If the Parties fail to meet and confer, or the meet-and-confer does not resolve the issue, after at least seven (7) days have passed after the meet-and-confer occurred or should have occurred, either Party shall be entitled to all rights and remedies under the law, including filing a motion with the United States District Court of California, Northern District, which shall retain jurisdiction over the Action until the Termination Date for the limited purposes of enforcement of the terms of this Decree.  The Parties shall be entitled to seek fees and costs incurred in any such motion, and such fees and costs shall be awarded, pursuant to the provisions set forth in the then-applicable federal Clean Water Act and Rule 11 of the Federal Rules of Civil Procedure, and applicable case law interpreting such provision.

**15.**     **CAT's Waiver and Release.**  Upon the Court Entry Date of this Decree, CAT, on its own behalf and on behalf of its members, subsidiaries, successors, assigns, directors, officers, agents, attorneys, representatives, and employees, releases Defendants and its officers, directors, employees, shareholders, parents, subsidiaries, and affiliates, and each of its predecessors, successors and assigns, and each of their agents, attorneys, consultants, and other representatives (each a "Released Defendant Party") from, and waives all claims arising from or pertaining to the Notice Letters, including, without limitation, all claims for injunctive relief, damages, penalties, fines, sanctions, mitigation (excluding all fees of attorneys, experts, and others, and costs per Section II above), or any other sum incurred or claimed or which could have been claimed under the Clean Water Act in this Action, for the alleged failure of

Defendants to comply with the Clean Water Act at the Facility, up to the Court Entry Date.

**16.     Defendants' Waiver and Release.**  Defendants, on their own behalf and on behalf of any Released Defendant Party under its control, release CAT (and its officers, directors, employees, members, parents, subsidiaries, and affiliates, and each of their successors and assigns, and its agents, attorneys, and other representative) from, and waives all claims which arise from or pertain to the Action, including all claims for fees (including fees of attorneys, experts, and others), costs, expenses or any other sum incurred or claimed or which could have been claimed for matters associated with or related to the Action.

## IV.     <u>MISCELLANEOUS PROVISIONS</u>

**17.** The Parties enter into this Decree for the purpose of avoiding prolonged and costly litigation of the Clean Water Act claims in the Action.  Nothing in this Decree shall be construed as, and Defendants expressly do not intend to imply, an admission as to any fact, finding, issue of law, or violation of law, nor shall compliance with this Decree constitute or be construed as an admission by Defendants of any fact, finding, conclusion, issue of law, or violation of law, nor deemed to be compliance with the General Permit or the Clean Water Act. However, this paragraph shall not diminish or otherwise affect the obligation, responsibilities, and duties of the Parties under this Decree.

**18.** The Decree shall be effective upon mutual execution by all Parties.  The Decree shall terminate on the "Termination Date," which shall be the first of the following two dates: (1) **November 1, 2025**; or (2) the date on which both of the following have occurred: (a) the Defendants have completed their obligations under Paragraphs 10 - 13 of this Consent Decree; and (b) the Defendants submit a Notice of Termination of Coverage under the General Permit to the Regional Water Quality Control Board.

**19.** The Decree may be executed in one or more counterparts which, taken together, shall be deemed to constitute one and the same document.  An executed copy of this Decree shall be valid as an original.

**20.** In the event that any one of the provisions of this Decree is held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

21.     The language in all parts of this Decree, unless otherwise stated, shall be construed according to its plain and ordinary meaning.  This Decree shall be construed pursuant to the law of the United Sates, without regard to choice of law principles.

22.     The undersigned are authorized to execute this Decree on behalf of their respective Parties and have read, understood and agreed to be bound by all of the terms and conditions of this Decree.

23.     All agreements, covenants, representations and warranties, express or implied, oral or written, of the Parties concerning the subject matter of this Decree are contained herein. This Decree and its attachments are made for the sole benefit of the Parties, and no other person or entity shall have any rights or remedies under or by reason of this Decree, unless otherwise expressly provided for therein.

24.     **Notices.**  Any notices or documents required or provided for by this Decree or related thereto that are to be provided to CAT pursuant to this Decree shall be hand-delivered or sent by U.S. Mail, postage prepaid, and addressed as follows or, in the alternative, shall be sent by electronic mail transmission to the email addresses listed below:

Patricia Clary, Executive Director
Californians for Alternatives to Toxics
600 F Street, Suite 3
Arcata, California 95521
Tel. (707) 834-4833
E-mail: patty@alt2tox.org

With copies sent to:
William Verick
Klamath Environmental Law Center
1125 16th Street, Suite 204
Arcata, CA 95521
Email: wverick@igc.org

And to:

Andrew L. Packard
William Carlon
Law Offices of Andrew L. Packard
245 Kentucky Street, Suite B3
Petaluma, California 94952
Tel:  (707) 782-4060
E-mail: andrew@packardlawoffices.com
        wncarlon@packardlawoffices.com

[PROPOSED] CONSENT DECREE                                    Case No. 3:22-CV-07511-JSC

Any notices or documents required or provided for by this Decree or related thereto that are to be provided to Defendants pursuant to this Decree shall be sent by U.S. Mail, postage prepaid, and addressed as follows or, in the alternative, shall be sent by electronic mail transmission to the email addresses listed below:

> Justin Lena
> R&L Lumber Company
> 1220 5th Street
> Arcata, CA 95521
> Tel: (925) 890-1468
> E-Mail: justin@randllumber.com

With copies sent to:

> Sean Hungerford
> HARRISON, TEMBLADOR,
> HUNGERFORD & GUERNSEY LLP
> 2801 T Street
> Sacramento, CA 95816
> Telephone: (916) 228-4229
> Email: shungerford@hthglaw.com

Each Party shall promptly notify the other of any change in the above-listed contact information.

     **25.**     Signatures of the Parties transmitted by facsimile or email shall be deemed binding.

     **26.**     If for any reason the Court should decline to approve this Decree in the form presented, the Parties shall use their best efforts to work together to modify the Decree within thirty (30) days so that it is acceptable to the Court. If the Parties are unable to modify this Decree in a mutually acceptable manner, this Decree shall become null and void.

     **27.**     This Decree shall be deemed to have been drafted equally by the Parties, and shall not be interpreted for or against any Settling Party on the ground that any such party drafted it.

     **28.**     This Decree and the attachments contain all of the terms and conditions agreed upon by the Parties relating to the matters covered by the Decree, and supersede any and all prior and contemporaneous agreements, negotiations, correspondence, understandings, and

1   communications of the Parties, whether oral or written, respecting the matters covered by this

2   Decree. This Decree may be amended or modified only by a writing signed by the Parties or

3   their authorized representatives. Any amendments to this Decree shall be subject to the United

4   States Department of Justice's 45-day statutory review as set forth in 33 U.S.C. § 1365(c).

5           The Parties hereto enter into this Decree and respectfully submit it to the Court for its

6   entry.

7   APPROVED AS TO CONTENT:

8   Dated: _____ July 5 _____, 2023          CALIFORNIANS FOR ALTERNATIVES TO
9                                            TOXICS

10                                  By: _____Patricia Clary_____
11                                       Patricia Clary, Executive Director

12  Dated: _____, 2023             R&L LUMBER COMPANY LLC

13
14                                  By: _____
                                         Justin Lena, Owner
15

16  Dated: _____, 2023             JUSTIN LENA

17                                  By: _____
18                                       Justin Lena

19
20  Dated: _____, 2023             UBI RUIZ

21                                  By: _____
                                         Ubi Ruiz
22  APPROVED AS TO FORM:

23  Dated: _____ July 5 _____, 2023          LAW OFFICES OF ANDREW L. PACKARD
24

25                                  By: _____
26                                       Andrew L. Packard
                                         Attorneys for Plaintiff
27                                       CALIFORNIANS FOR ALTERNATIVES TO
                                         TOXICS
28

- 14 -

communications of the Parties, whether oral or written, respecting the matters covered by this Decree.  This Decree may be amended or modified only by a writing signed by the Parties or their authorized representatives.  Any amendments to this Decree shall be subject to the United States Department of Justice's 45-day statutory review as set forth in 33 U.S.C. § 1365(c).

The Parties hereto enter into this Decree and respectfully submit it to the Court for its entry.

APPROVED AS TO CONTENT:

Dated: _____, 2023      CALIFORNIANS FOR ALTERNATIVES TO
                                      TOXICS

                             By:  _____
                                  Patricia Clary, Executive Director

Dated: _7/5/23_____, 2023      R&L LUMBER COMPANY LLC

                             By:  _____
                                  Justin Lena, Owner

Dated: _7/5/23_____, 2023      JUSTIN LENA

                             By:  _____
                                  Justin Lena

Dated: _7/5/23_____, 2023      UBI RUIZ

                             By:  _____
                                  Ubi Ruiz

APPROVED AS TO FORM:

Dated: _____, 2023      LAW OFFICES OF ANDREW L.PACKARD

                             By:  _____
                                  Andrew L. Packard
                                  Attorneys for Plaintiff
                                  CALIFORNIANS FOR ALTERNATIVES TO
                                  TOXICS

- 14 -

Dated: July 11, 2023 , 2023    HARRISON, TEMBLADOR, HUNGERFORD &
                                GUERNSEY LLP

By:

Sean Hungerford
Attorney for Defendants
R&L LUMBER COMPANY LLC, JUSTIN
LENA, AND UBI RUIZ

Good cause appearing, **IT IS SO ORDERED.**

Dated: _____, 2023

By:    _____

Hon. Judge Jacqueline Scott Corley
Unites Stated District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**EXHIBIT A – Facility Site Map**

- 16 -



**R & L Sawmill**
1220 5th Street
Arcata, CA

Environmental
POLLUTION
SOLUTIONS

July 2023

**Exhibit A**

1 inch = 80 feet

LEGEND

SELECTED PARCEL BOUNDARY
GENERAL SURFACE WATER FLOW DIRECTION
LEASED AREA BOUNDARY
ROOF/IMPERMEABLE SURFACE
K-RAILS
WATTLE/FIBER ROLL

RUN-ON CHANNEL
SURFACE RUN ON
ROCK BERM
FENCE LINE
UNDERGROUND LINE AND PUMP
DIRT BERM

WESTERN PERIMETER
RUN-ON CONTROLS

1. FENCE
2. RUN-ON CHANNEL
3. K-RAILS
4. WATTLE

OUTDOOR LEASED AREA

PERMEABLE...................161,280 FT²
IMPERMEABLE...................13,850 FT²
PRIMARY SETTLING BASIN.........9,600 FT²
SECONDARY SETTLING BASIN....10,385 FT²

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23          **EXHIBIT B – CWA Notice of Violation and Intent to Sue Letter**
24
25
26
27
28

Law Offices Of

ANDREW L. PACKARD

245 Kentucky Street, Suite B3, Petaluma, CA 94952
Phone (707) 782-4060   Fax (707) 782-4062
Info@PackardLawOffices.com

September 30, 2022

**VIA CERTIFIED MAIL**

| Justin Lena and Ubi Ruiz | Brie Bales |
|---|---|
| R&L Lumber Company LLC | R&L Lumber Company LLC |
| 1220 5th Street | 2336 Bates Avenue |
| Arcata, CA 95521 | Concord, CA 94520 |

**Re:** **NOTICE OF VIOLATIONS AND INTENT TO FILE SUIT UNDER THE FEDERAL WATER POLLUTION CONTROL ACT ("CLEAN WATER ACT") (33 U.S.C. §§ 1251 *et seq.*)**

Dear Justin Lena, Ubi Ruiz, and Brie Bales:

Californians for Alternatives to Toxics ("CATs") provides this notice of violations of the Clean Water Act ("the Act") occurring at R&L Lumber's industrial facility located at 1220 5th Street, in Arcata, California (the "Facility"). This letter is being sent to you as the responsible owners, officers and/or operators of the Facility. Unless otherwise noted, R&L Lumber Company LLC, Justin Lena, Ubi Ruiz, and Brie Bales shall hereinafter be collectively referred to as "R&L Lumber." CATs is a non-profit association dedicated to the preservation, protection and defense of the environment, wildlife and natural resources of California waters, including the waters into which R&L Lumber discharges polluted storm water.

Pursuant to Section 309(d) of the Act (33 U.S.C. § 1319(d)) and the Adjustment of Civil Monetary Penalties for Inflation (40 C.F.R. § 19.4) each separate violation of the Act subjects R&L Lumber to a penalty of up to $59,973 per day per violation for all violations occurring between September 30, 2017 and the present. In addition to civil penalties, CATs will seek injunctive relief preventing further violations of the Act pursuant to Sections 505(a) and (d) (33 U.S.C. § 1365(a) and (d)) and such other relief as permitted by law. Lastly, Section 505(d) of the Act (33 U.S.C. § 1365(d)) permits prevailing parties to recover costs and fees, including attorneys' fees.

The Clean Water Act requires that sixty (60) days prior to the initiation of a citizen-enforcement action under Section 505(a) of the Act (33 U.S.C. § 1365(a)), a citizen enforcer must give notice of its intent to file suit. Notice must be given to the alleged violator, the U.S. Environmental Protection Agency, and the Chief Administrative Officer of the water pollution control agency for the State in which the violations occur. *See* 40 C.F.R. § 135.2. As required by the Act, this letter provides statutory notice of the violations that have occurred, and continue to occur, at the Facility. 40 C.F.R. § 135.3(a). At the expiration of sixty (60) days from the date of this letter, CATs intends to file suit under Section 505(a) of the Act in federal court against R&L Lumber for violations of the Clean Water Act and the Permit.

Notice of Violation and Intent to File Suit
September 30, 2022
Page 2

I.      **Background.**

A.      **The Clean Water Act.**

Congress enacted the CWA in 1972 in order to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251.  The Act prohibits the discharge of pollutants into United States waters except as authorized by the statute. 33 U.S.C. § 1311; *San Francisco BayKeeper, Inc. v. Tosco Corp*., 309 F.3d 1153, 1156 (9th Cir. 2002).  The Act is administered largely through the NPDES permit program.  33 U.S.C. § 1342. In 1987, the Act was amended to establish a framework for regulating storm water discharges through the NPDES system.  Water Quality Act of 1987, Pub. L. 100-4, § 405, 101 Stat. 7, 69 (1987) (codified at 33 U.S.C. § 1342(p)); *see also Envtl. Def. Ctr., Inc. v. EPA*, 344 F.3d 832, 840-41 (9th Cir. 2003) (describing the problem of storm water runoff and summarizing the Clean Water Act's permitting scheme). The discharge of pollutants without an NPDES permit, or in violation of a permit, is illegal.  *Ecological Rights Found. v. Pacific Lumber Co*., 230 F.3d 1141, 1145 (9th Cir. 2000).

Much of the responsibility for administering the NPDES permitting system has been delegated to the states.  *See* 33 U.S.C. § 1342(b); *see also* Cal. Water Code § 13370 (expressing California's intent to implement its own NPDES permit program).  The CWA authorizes states with approved NPDES permit programs to regulate industrial storm water discharges through individual permits issued to dischargers and/or through the issuance of a single, statewide general permit applicable to all industrial storm water dischargers.  33 U.S.C. § 1342(b). Pursuant to Section 402 of the Act, the Administrator of EPA has authorized California's State Board to issue individual and general NPDES permits in California. 33 U.S.C. § 1342.

B.      **California's General Permit for Storm Water Discharges Associated with Industrial Activities**

On July 1, 2015, pursuant to Order No. 2015-0057-DWQ the General Permit was reissued, including many of the same fundamental terms as the prior permit.  Facilities discharging, or having the potential to discharge, storm water associated with industrial activities that have not obtained an individual NPDES permit must apply for coverage under the General Permit by filing a Notice of Intent to Comply ("NOI").  General Permit, Standard Condition XXI.A.  Facilities must file their NOIs before the initiation of industrial operations.  *Id.* Facilities must strictly comply with all of the terms and conditions of the General Permit.  A violation of the General Permit is a violation of the CWA.

C.      **R&L Lumber's Arcata Facility**

R&L Lumber operates a lumber yard in Humboldt County where it conducts various industrial activities, including the storage and treatment of logs, de-barking of logs, the storage and handling of soil amendments/compost, loading and unloading of logs and wastes associated

Notice of Violation and Intent to File Suit
September 30, 2022
Page 3

with log-processing, equipment storage and maintenance, and the storage of various industrial materials, including bark, sawdust, oil and grease, and fuel. The industrial activities at the Facility fall under Standard Industrial Classification ("SIC") Codes 2411 – ("Logging") and 2421 – ("Sawmills and Planing Mills").

R&L Lumber collects and discharges storm water associated with industrial activities at the Facility into Janes Creek, Jolly Giant Creek, McDaniel Slough, Arcata Bay, and the Pacific Ocean. Janes Creek, Jolly Giant Creek, McDaniel Slough, Arcata Bay and the Pacific Ocean are waters of the United States within the meaning of the Clean Water Act.

R&L Lumber's Facility appears to be mostly paved, and the potential for storm water runoff is high. Adjacent to the Facility's southern boundary is a roadside ditch that runs along Highway 255. R&L Lumber stores industrial materials, including sawdust, bark, and other log-processing byproducts and wastes, in the areas of its Facility that are adjacent to this storm water ditch, and in some places, R&L Lumber's industrial materials spill into the ditch. During rain events, storm water comes into contact with these industrial materials, stockpiled in the open, and storm water discharges from the Facility into the roadside ditch. Storm water that comes into contact with R&L Lumber's industrial activities and materials picks up pollutants, such as sediment, oil and grease, material that elevates chemical oxygen demand, tannins and lignens, metals such as lead, iron and aluminum, semi-volatile organic compounds such as pentachlorophenol, tetrachlorophenol, polychlorinated dibenzo dioxins and polychlorinated dibenzo furans. This ditch carries the pollutants discharged from the Facility to Janes Creek, Jolly Giant Creek, McDaniel Slough, and then eventually to Arcata Bay and the Pacific Ocean

## II.    R&L Lumber's Violations of the Act and Permit.

Based on its review of available public documents, CATs is informed and believes that R&L Lumber is in ongoing violation of the CWA and the General Permit. These violations are ongoing and continuous. Consistent with the statute of limitations applicable to citizen enforcement actions brought pursuant to the federal Clean Water Act, R&L Lumber is subject to penalties for violations of the Act since September 30, 2017.

### A.    R&L Lumber Discharges Storm Water Associated with Industrial Activity Without a NPDES Permit.

R&L Lumber owns and/or operates an industrial facility conducting log processing and milling activities. Facilities that conduct these types of activities are required to obtain General Permit coverage. 40 C.F.R. §§ 122.26(a)(1), 122.26(a)(9)(i); General Permit, Section I.A.9 and Attachment A. R&L Lumber is therefore required to obtain General Permit coverage for the Facility. The Stormwater Multiple Application & Report Track System ("SMARTS") website[1] indicates that a soil and fertilizer company operated at the same address as R&L Lumber, and was covered under the General Permit until coverage was terminated in December 2008.

---

[1] https://smarts.waterboards.ca.gov/

Notice of Violation and Intent to File Suit
September 30, 2022
Page 4

However, a review of SMARTS indicates that no facility currently has General Permit coverage to operate at 1220 5th Street, Arcata, California 95521, and R&L Lumber does not otherwise have any General Permit Coverage.  Section II.B.5 of the General Permit states that "[n]ew Dischargers registering for NOI coverage on or after Jul1, 2015 shall certify and submit [Permit Registration Documents] via SMARTS at least seven (7) days prior to commencement of industrial activities."  Based on the information available to CATs on the SMARTS website, R&L Lumber does not have General Permit coverage and R&L Lumber has been operating its Facility without a General Permit.  Each and every day R&L Lumber discharges storm water associated with industrial activities from its Facility without an NPDES permit is a separate and distinct violation of the Clean Water Act, 33 U.S.C. § 1311(a).  CATs is informed and believes that R&L Lumber has discharged storm water from the Facility in violation of the Clean Water Act, 33 U.S.C. § 1311(a), on each and every significant rain event identified in **Attachment A** to this letter.

> **B.      Failure to Have Formulated an Adequate Stormwater Pollution Prevention Plan ("SWPPP")**.

R&L Lumber does not have in place an adequate Stormwater Pollution Prevention Plan. Nor does R&L Lumber have in place an adequate monitoring and reporting plan.  On multiple occasions when qualifying storm events have occurred, R&L Lumber has failed to sample and analyze the stormwater it discharges for pollutants that – based on history of use of the site and the R&L Lumber's status as a lumber mill – are likely to be present in the storm water that R&L Lumber discharges.  R&L Lumber has not implemented best conventional pollutant control technology and best available technology economically achievable to reduce or prevent pollutants in its storm water discharges from the Facility.  R&L Lumber does not have in place adequate best management practices to minimize or prevent the discharge of the pollutants identified above from its Facility during significant rain events.

## III.      Persons Responsible for the Violations.

CATs puts R&L Lumber on notice that they are the persons and entities responsible for the violations described above.  If additional persons are subsequently identified as also being responsible for the violations set forth above, CATs puts R&L Lumber on formal notice that it intends to include those persons in this action.

## IV.      Name and Address of Noticing Parties.

The name, address and telephone number of each of the noticing parties is as follows:

Patricia Clary, Executive Director
Californians for Alternatives to Toxics
P.O. Box 900
Eureka, CA 95502
(707) 834-4833

Notice of Violation and Intent to File Suit
September 30, 2022
Page 5

**V.      Counsel.**

CATs has retained legal counsel to represent it in this matter.  Please direct all communications to:

Andrew L. Packard                    William Verick
William N. Carlon                    Klamath Environmental Law Center
Law Offices of Andrew L.             1125 16th Street, Suite 204
Packard                              Arcata, CA 95521
245 Kentucky Street, Suite B3        (707) 630-5061
Petaluma, CA 94952                   wverick@igc.org
(707) 782-4060
andrew@packardlawoffices.com
wncarlon@packardlawoffices.com

**VI.      Conclusion**

CATs believes this Notice of Violations and Intent to File Suit sufficiently states grounds for filing suit.  We intend to file a citizen suit under Section 505(a) of the CWA against R&L Lumber and their agents for the above-referenced violations upon the expiration of the 60-day notice period.  If you wish to pursue remedies in the absence of litigation, we suggest that you initiate those discussions within the next 20 days so that they may be completed before the end of the 60-day notice period.  We do not intend to delay the filing of a complaint in federal court if discussions are continuing when that period ends.

Sincerely,

William Carlon
Law Offices of Andrew L. Packard
Counsel for Californians for Alternatives to Toxics

Notice of Violation and Intent to File Suit
September 30, 2022
Page 6

## SERVICE LIST

## VIA CERTIFIED MAIL

Michael Regan, Administrator
U.S. Environmental Protection Agency
1200 Pennsylvania Ave., N.W.
Washington, D.C. 20460

Martha Guzman, Regional Administrator
U.S. Environmental Protection Agency, Region IX
75 Hawthorne Street
San Francisco, CA 94105

Merrick B. Garland, U.S. Attorney General
U.S. Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, DC 20530-0001

Eileen Sobeck, Executive Director
State Water Resources Control Board
P.O. Box 100
Sacramento, CA 95812

Matthias St. John, Executive Officer
North Coast Regional Water Quality Control Board
5550 Skylane Boulevard Suite A
Santa Rosa, CA 95403

**ATTACHMENT A**
**Notice of Intent to File Suit, R&L Lumber**
**Significant Rain Events,\* September 30, 2017 – September 30, 2022**

| | | | |
|---|---|---|---|
| October 20, 2017 | January 26, 2018 | September 30, 2018 | February 5, 2019 |
| November 3, 2017 | January 27, 2018 | October 2, 2018 | February 9, 2019 |
| November 4, 2017 | February 12, 2018 | October 6, 2018 | February 10, 2019 |
| November 6, 2017 | February 18, 2018 | October 24, 2018 | February 11, 2019 |
| November 9, 2017 | February 19, 2018 | October 28, 2018 | February 14, 2019 |
| November 10, 2017 | February 22, 2018 | November 22, 2018 | February 15, 2019 |
| November 11, 2017 | February 23, 2018 | November 23, 2018 | February 24, 2019 |
| November 13, 2017 | February 25, 2018 | November 24, 2018 | February 25, 2019 |
| November 14, 2017 | February 26, 2018 | November 27, 2018 | February 26, 2019 |
| November 16, 2017 | March 1, 2018 | November 28, 2018 | February 27, 2019 |
| November 17, 2017 | March 2, 2018 | November 29, 2018 | February 28, 2019 |
| November 20, 2017 | March 3, 2018 | November 30, 2018 | March 2, 2019 |
| November 21, 2017 | March 4, 2018 | December 1, 2018 | March 6, 2019 |
| November 23, 2017 | March 8, 2018 | December 2, 2018 | March 7, 2019 |
| November 24, 2017 | March 9, 2018 | December 8, 2018 | March 10, 2019 |
| November 26, 2017 | March 13, 2018 | December 10, 2018 | March 12, 2019 |
| November 27, 2017 | March 14, 2018 | December 12, 2018 | March 13, 2019 |
| November 29, 2017 | March 15, 2018 | December 15, 2018 | March 21, 2019 |
| December 3, 2017 | March 16, 2018 | December 17, 2018 | March 22, 2019 |
| December 20, 2017 | March 17, 2018 | December 19, 2018 | March 23, 2019 |
| December 28, 2017 | March 22, 2018 | December 21, 2018 | March 25, 2019 |
| December 30, 2017 | March 23, 2018 | December 24, 2018 | March 26, 2019 |
| January 4, 2018 | March 24, 2018 | December 25, 2018 | March 27, 2019 |
| January 5, 2018 | March 25, 2018 | December 30, 2018 | March 28, 2019 |
| January 6, 2018 | April 6, 2018 | January 6, 2019 | March 29, 2019 |
| January 8, 2018 | April 7, 2018 | January 7, 2019 | April 3, 2019 |
| January 9, 2018 | April 8, 2018 | January 8, 2019 | April 5, 2019 |
| January 10, 2018 | April 10, 2018 | January 9, 2019 | April 6, 2019 |
| January 11, 2018 | April 11, 2018 | January 10, 2019 | April 8, 2019 |
| January 12, 2018 | April 12, 2018 | January 17, 2019 | April 9, 2019 |
| January 16, 2018 | April 13, 2018 | January 18, 2019 | April 16, 2019 |
| January 18, 2018 | April 16, 2018 | January 19, 2019 | May 16, 2019 |
| January 19, 2018 | April 28, 2018 | January 20, 2019 | May 17, 2019 |
| January 20, 2018 | April 29, 2018 | January 21, 2019 | May 19, 2019 |
| January 22, 2018 | May 9, 2018 | February 2, 2019 | May 21, 2019 |
| January 24, 2018 | May 26, 2018 | February 3, 2019 | May 22, 2019 |
| January 25, 2018 | June 9, 2018 | February 4, 2019 | May 26, 2019 |

**ATTACHMENT A**
**Notice of Intent to File Suit, R&L Lumber**
**Significant Rain Events,\* September 30, 2017 – September 30, 2022**

| | | | |
|---|---|---|---|
| August 10, 2019 | October 17, 2019 | January 26, 2020 | November 14, 2020 |
| September 16, 2019 | October 18, 2019 | January 27, 2020 | November 15, 2020 |
| September 18, 2019 | October 19, 2019 | January 28, 2020 | November 17, 2020 |
| September 19, 2019 | November 19, 2019 | January 30, 2020 | November 18, 2020 |
| September 23, 2019 | November 27, 2019 | February 2, 2020 | November 19, 2020 |
| September 30, 2019 | November 28, 2019 | February 3, 2020 | November 25, 2020 |
| October 17, 2019 | November 30, 2019 | February 16, 2020 | December 6, 2020 |
| October 18, 2019 | December 1, 2019 | February 17, 2020 | December 12, 2020 |
| October 19, 2019 | December 2, 2019 | March 7, 2020 | December 13, 2020 |
| November 19, 2019 | December 3, 2019 | March 14, 2020 | December 14, 2020 |
| November 27, 2019 | December 7, 2019 | March 15, 2020 | December 15, 2020 |
| November 28, 2019 | December 8, 2019 | March 17, 2020 | December 16, 2020 |
| November 30, 2019 | December 12, 2019 | March 18, 2020 | December 17, 2020 |
| December 1, 2019 | December 13, 2019 | March 24, 2020 | December 20, 2020 |
| December 2, 2019 | December 14, 2019 | March 25, 2020 | December 22, 2020 |
| December 3, 2019 | December 15, 2019 | March 30, 2020 | December 26, 2020 |
| December 7, 2019 | December 19, 2019 | March 31, 2020 | December 31, 2020 |
| December 8, 2019 | December 20, 2019 | April 4, 2020 | January 2, 2021 |
| December 12, 2019 | December 22, 2019 | April 5, 2020 | January 3, 2021 |
| December 13, 2019 | December 23, 2019 | April 6, 2020 | January 4, 2021 |
| December 14, 2019 | December 25, 2019 | April 23, 2020 | January 5, 2021 |
| December 15, 2019 | December 30, 2019 | May 3, 2020 | January 6, 2021 |
| December 19, 2019 | January 1, 2020 | May 12, 2020 | January 8, 2021 |
| December 20, 2019 | January 2, 2020 | May 14, 2020 | January 10, 2021 |
| December 22, 2019 | January 4, 2020 | May 15, 2020 | January 12, 2021 |
| December 23, 2019 | January 8, 2020 | May 17, 2020 | January 13, 2021 |
| December 25, 2019 | January 9, 2020 | May 18, 2020 | January 22, 2021 |
| December 30, 2019 | January 11, 2020 | May 19, 2020 | January 25, 2021 |
| January 1, 2020 | January 12, 2020 | May 30, 2020 | January 26, 2021 |
| January 2, 2020 | January 13, 2020 | May 31, 2020 | January 27, 2021 |
| January 4, 2020 | January 14, 2020 | June 7, 2020 | January 28, 2021 |
| August 10, 2019 | January 15, 2020 | June 16, 2020 | January 29, 2021 |
| September 16, 2019 | January 16, 2020 | September 18, 2020 | January 31, 2021 |
| September 18, 2019 | January 17, 2020 | September 24, 2020 | February 1, 2021 |
| September 19, 2019 | January 21, 2020 | October 11, 2020 | February 2, 2021 |
| September 23, 2019 | January 24, 2020 | November 6, 2020 | February 3, 2021 |
| September 30, 2019 | January 25, 2020 | November 7, 2020 | February 12, 2021 |

**ATTACHMENT A**
**Notice of Intent to File Suit, R&L Lumber**
**Significant Rain Events,\* September 30, 2017 – September 30, 2022**

| | | |
|---|---|---|
| February 13, 2021 | November 9, 2021 | April 22, 2022 |
| February 14, 2021 | November 15, 2021 | April 30, 2022 |
| February 15, 2021 | November 16, 2021 | May 2, 2022 |
| February 16, 2021 | December 7, 2021 | May 5, 2022 |
| February 18, 2021 | December 12, 2021 | May 6, 2022 |
| February 19, 2021 | December 13, 2021 | May 8, 2022 |
| February 20, 2021 | December 14, 2021 | May 9, 2022 |
| March 6, 2021 | December 16, 2021 | May 14, 2022 |
| March 7, 2021 | December 19, 2021 | May 25, 2022 |
| March 9, 2021 | December 22, 2021 | May 29, 2022 |
| March 10, 2021 | December 23, 2021 | June 3, 2022 |
| March 15, 2021 | December 24, 2021 | June 4, 2022 |
| March 19, 2021 | December 25, 2021 | June 5, 2022 |
| March 20, 2021 | December 26, 2021 | June 12, 2022 |
| April 25, 2021 | December 27, 2021 | June 28, 2022 |
| April 26, 2021 | December 29, 2021 | July 4, 2022 |
| May 7, 2021 | December 31, 2021 | July 5, 2022 |
| May 25, 2021 | January 4, 2022 | July 6, 2022 |
| June 12, 2021 | January 5, 2022 | August 3, 2022 |
| June 14, 2021 | January 6, 2022 | August 18, 2022 |
| September 18, 2021 | January 7, 2022 | September 7, 2022 |
| September 19, 2021 | January 15, 2022 | September 18, 2022 |
| September 28, 2021 | February 22, 2022 | September 19, 2022 |
| October 18, 2021 | March 15, 2022 | |
| October 20, 2021 | March 19, 2022 | |
| October 22, 2021 | March 20, 2022 | |
| October 23, 2021 | April 4, 2022 | |
| October 24, 2021 | April 5, 2022 | |
| October 25, 2021 | April 9, 2022 | |
| October 26, 2021 | April 11, 2022 | |
| October 27, 2021 | April 12, 2022 | |
| October 31, 2021 | April 13, 2022 | |
| November 1, 2021 | April 14, 2022 | |
| November 2, 2021 | April 16, 2022 | |
| November 4, 2021 | April 19, 2022 | |
| November 5, 2021 | April 20, 2022 | |
| November 6, 2021 | April 21, 2022 | |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
**EXHIBIT C – Second CWA Notice of Violation and Intent to Sue Letter**
24
25
26
27
28

Law Offices Of

# ANDREW L. PACKARD

245 Kentucky Street, Suite B3, Petaluma, CA 94952
Phone (707) 782-4060   Fax (707) 782-4062
Info@PackardLawOffices.com

December 30, 2022

**VIA CERTIFIED MAIL**

Justin Lena and Ubi Ruiz                          Brie Bales
R&L Lumber Company LLC                     R&L Lumber Company LLC
1220 5th Street                                        2336 Bates Avenue
Arcata, CA 95521                                    Concord, CA 94520

Re:    **NOTICE OF VIOLATIONS AND INTENT TO FILE SUIT UNDER THE
       FEDERAL WATER POLLUTION CONTROL ACT ("CLEAN WATER ACT")
       (33 U.S.C. §§ 1251 *et seq.*)**

Dear Justin Lena, Ubi Ruiz, and Brie Bales:

Californians for Alternatives to Toxics ("CATs") provides this notice of violations of the
Clean Water Act ("the Act") occurring at R&L Lumber's industrial facility located at 1220 5th
Street, in Arcata, California (the "Facility").  This letter is being sent to you as the responsible
owners, officers and/or operators of the Facility.  Unless otherwise noted, R&L Lumber
Company LLC, Justin Lena, Ubi Ruiz, and Brie Bales shall hereinafter be collectively referred to
as "R&L Lumber."  CATs is a non-profit corporation dedicated to the preservation, protection
and defense of the environment, wildlife and natural resources of California waters, including the
waters into which R&L Lumber discharges polluted storm water.

Pursuant to Section 309(d) of the Act (33 U.S.C. § 1319(d)) and the Adjustment of Civil
Monetary Penalties for Inflation (40 C.F.R. § 19.4) each separate violation of the Act subjects
R&L Lumber to a penalty of up to $59,973 per day per violation for all violations occurring
between September 30, 2017 and the present.  In addition to civil penalties, CATs will seek
injunctive relief preventing further violations of the Act pursuant to Sections 505(a) and (d) (33
U.S.C. § 1365(a) and (d)) and such other relief as permitted by law.  Lastly, Section 505(d) of
the Act (33 U.S.C. § 1365(d)) permits prevailing parties to recover costs and fees, including
attorneys' fees.

The Clean Water Act requires that sixty (60) days prior to the initiation of a citizen-
enforcement action under Section 505(a) of the Act (33 U.S.C. § 1365(a)), a citizen enforcer
must give notice of its intent to file suit.  Notice must be given to the alleged violator, the U.S.
Environmental Protection Agency, and the Chief Administrative Officer of the water pollution
control agency for the State in which the violations occur.  *See* 40 C.F.R. § 135.2.  As required
by the Act, this letter provides statutory notice of the violations that have occurred, and continue
to occur, at the Facility.  40 C.F.R. § 135.3(a).  At the expiration of sixty (60) days from the date
of this letter, CATs intends to amend the complaint it has filed in the existing Northern District
of California case, 1-22-cv-07511 JSC to allege that this letter has been sent and to include in the

Notice of Violation and Intent to File Suit
December 30, 2022
Page 2

complaint in that action the allegations made in this letter.

## I.      Background.

### A.      The Clean Water Act.

Congress enacted the CWA in 1972 in order to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251.  The Act prohibits the discharge of pollutants into United States waters except as authorized by the statute. 33 U.S.C. § 1311; *San Francisco BayKeeper, Inc. v. Tosco Corp*., 309 F.3d 1153, 1156 (9th Cir. 2002).  The Act is administered largely through the NPDES permit program.  33 U.S.C. § 1342. In 1987, the Act was amended to establish a framework for regulating storm water discharges through the NPDES system.  Water Quality Act of 1987, Pub. L. 100-4, § 405, 101 Stat. 7, 69 (1987) (codified at 33 U.S.C. § 1342(p)); *see also Envtl. Def. Ctr., Inc. v. EPA*, 344 F.3d 832, 840-41 (9th Cir. 2003) (describing the problem of storm water runoff and summarizing the Clean Water Act's permitting scheme). The discharge of pollutants without an NPDES permit, or in violation of a permit, is illegal.  *Ecological Rights Found. v. Pacific Lumber Co*., 230 F.3d 1141, 1145 (9th Cir. 2000).

Much of the responsibility for administering the NPDES permitting system has been delegated to the states.  *See* 33 U.S.C. § 1342(b); *see also* Cal. Water Code § 13370 (expressing California's intent to implement its own NPDES permit program).  The CWA authorizes states with approved NPDES permit programs to regulate industrial storm water discharges through individual permits issued to dischargers and/or through the issuance of a single, statewide general permit applicable to all industrial storm water dischargers.  33 U.S.C. § 1342(b). Pursuant to Section 402 of the Act, the Administrator of EPA has authorized California's State Board to issue individual and general NPDES permits in California. 33 U.S.C. § 1342.

### B.      California's General Permit for Storm Water Discharges Associated with Industrial Activities

On July 1, 2015, pursuant to Order No. 2015-0057-DWQ the General Permit was reissued, including many of the same fundamental terms as the prior permit.  Facilities discharging, or having the potential to discharge, storm water associated with industrial activities that have not obtained an individual NPDES permit must apply for coverage under the General Permit by filing a Notice of Intent to Comply ("NOI").  General Permit, Standard Condition XXI.A.  Facilities must file their NOIs before the initiation of industrial operations.  *Id.* Facilities must strictly comply with all of the terms and conditions of the General Permit.  A violation of the General Permit is a violation of the CWA.

Facilities must strictly comply with all of the terms and conditions of the General Permit. A violation of the General Permit is a violation of the CWA.

The General Permit contains three primary and interrelated categories of requirements: (1) discharge prohibitions, receiving water limitations and effluent limitations; (2) Storm Water

Notice of Violation and Intent to File Suit
December 30, 2022
Page 3

Pollution Prevention Plan ("SWPPP") requirements; and (3) self-monitoring and reporting requirements.

### C.    R&L Lumber's Arcata Facility

R&L Lumber operates a lumber yard in Humboldt County where it conducts various industrial activities, including the storage and treatment of logs, de-barking of logs, the storage and handling of soil amendments/compost, loading and unloading of logs and wastes associated with log-processing, equipment storage and maintenance, and the storage of various industrial materials, including bark, sawdust, oil and grease, dirt, and fuel.  The industrial activities at the Facility fall under Standard Industrial Classification ("SIC") Codes 2411 – ("Logging") and 2421 – ("Sawmills and Planing Mills").

R&L Lumber collects and discharges storm water associated with industrial activities at the Facility into Janes Creek, Jolly Giant Creek, McDaniel Slough, Arcata Bay, and the Pacific Ocean.  Janes Creek, Jolly Giant Creek, McDaniel Slough, Arcata Bay and the Pacific Ocean ("Impacted Waters") are waters of the United States within the meaning of the Clean Water Act.

R&L Lumber's Facility appears to be mostly paved, and the potential for storm water runoff is high.  Adjacent to the Facility's southern boundary is a roadside ditch that runs along Highway 255.  R&L Lumber stores industrial materials, including sawdust, bark, and other log-processing byproducts and wastes, in the areas of its Facility that are adjacent to this storm water ditch, and in some places, R&L Lumber's industrial materials spill into the ditch.  During rain events, storm water comes into contact with these industrial materials, stockpiled in the open, and storm water discharges from the Facility into the roadside ditch.  Storm water that comes into contact with R&L Lumber's industrial activities and materials picks up pollutants, such as sediment, oil and grease, material that elevates chemical oxygen demand, tannins and lignens, metals such as lead, iron and aluminum, semi-volatile organic compounds such as pentachlorophenol, tetrachlorophenol, polychlorinated dibenzo dioxins and polychlorinated dibenzo furans.  This ditch carries the pollutants discharged from the Facility to Janes Creek, Jolly Giant Creek, McDaniel Slough, and then eventually to Arcata Bay and the Pacific Ocean

## II.    R&L Lumber's Violations of the Act and Permit.

Based on its review of available public documents, CATs is informed and believes that R&L Lumber is in ongoing violation of both the substantive and procedural requirements of the CWA and the General Permit.  These violations are ongoing and continuous.  Consistent with the statute of limitations applicable to citizen enforcement actions brought pursuant to the federal Clean Water Act, R&L Lumber is subject to penalties for violations of the Act since December 5, 2022.

Notice of Violation and Intent to File Suit
December 30, 2022
Page 4

### A.   R&L Lumber Discharges Storm Water Containing Pollutants in Violation of the General Permit's Discharge Prohibitions, Receiving Water Limitations and Effluent Limitations.

#### 1.   Applicable Water Quality Standards.

The General Permit requires that storm water discharges and authorized non-storm water discharges shall not cause or threaten to cause pollution, contamination, or nuisance.  General Permit, Discharge Prohibition III.C.  The General Permit also prohibits discharges that violate any discharge prohibition contained in the applicable Regional Water Board's Basin Plan or statewide water quality control plans and policies.  General Permit, Discharge Prohibition III.D. Furthermore, storm water discharges and authorized non-storm water discharges shall not adversely impact human health or the environment, and shall not cause or contribute to a violation of any water quality standards in any affected receiving water.  General Permit, Receiving Water Limitations VI.A, VI.B.

Dischargers are also required to prepare and submit documentation to the Regional Board upon determination that storm water discharges are in violation of the General Permit's Receiving Water Limitations.  General Permit, Special Condition XX.B.  The documentation must describe changes the discharger will make to its current storm water best management practices ("BMPs") in order to prevent or reduce any pollutant in its storm water discharges that is causing or contributing to an exceedance of water quality standards.  *Id.*

#### 2.   Applicable Effluent Limitations.

Dischargers are required to reduce or prevent pollutants in their storm water discharges through implementation of best available technology economically achievable ("BAT") for toxic and nonconventional pollutants and best conventional pollutant control technology ("BCT") for conventional pollutants.  General Permit, Effluent Limitation V.A.  Conventional pollutants include Total Suspended Solids, Oil & Grease, pH, Biochemical Oxygen Demand and Fecal Coliform.  40 C.F.R. § 401.16.  All other pollutants are either toxic or nonconventional.  40 C.F.R. §§ 401.15-16.

Under the General Permit, benchmark levels established by the EPA ("EPA benchmarks") serve as guidelines for determining whether a facility discharging industrial storm water has implemented the requisite BAT and BCT.  *Santa Monica Baykeeper v. Kramer Metals,* 619 F. Supp. 2d 914, 920, 923 (C.D. Cal 2009); General Permit, Exceedance Response Action XII.A.

The following EPA benchmarks have been established for pollutants discharged by R&L Lumber: Total Suspended Solids – 100 mg/L; Oil & Grease – 15.0 mg/L; pH – 6.0-9.0 s.u., Chemical Oxygen Demand – 120 mg/L; Zinc – 0.26 mg/L; Aluminum – 0.75 mg/L; Iron – 1.0 mg/L; Lead – 0.262 mg/L; and Copper – 0.0332 mg/L.

Notice of Violation and Intent to File Suit
December 30, 2022
Page 5

### 3.      R&L Lumber's Discharges of Polluted Storm Water

R&L Lumber obtained General Permit coverage on December 5, 2022[1], and since then several rain events have occurred that have caused the Facility to discharge storm water associated with industrial activities to the Impacted Waters.  Specifically, CATs has observed highly turbid storm water discharging from the Facility on several occasions, including December 8, 2022, and December 11, 2022.  On at least one occasion, storm water with a visible oily sheen was being discharged from the Facility.

CATs' observations demonstrate violations of the Permit's discharge prohibitions, receiving water limitations and effluent limitations set forth above.  CATs is informed and believes that R&L Lumber has known that its storm water contains pollutants at level exceeding General Permit standards since at least December 5, 2022.

CATs alleges that such violations occur each time storm water discharges from the Facility.  Attachment A hereto, sets forth the specific rain dates on which CATs alleges that R&L Lumber has discharged storm water containing impermissible levels of pollutants in violation of the General Permit.  General Permit, Discharge Prohibitions III.C and III.D, Receiving Water Limitation VI.A, VI.B.

### B.   R&L Lumber Has Failed to Implement BAT and BCT

Dischargers must implement BMPs that fulfill the BAT/BCT requirements of the CWA and the General Permit to reduce or prevent discharges of pollutants in their storm water discharges.  General Permit, Effluent Limitation V.A.  To meet the BAT/BCT standard, dischargers must implement minimum BMPs and any advanced BMPs set forth in the General Permit's SWPPP Requirements provisions where necessary to reduce or prevent pollutants in discharges.  *See* General Permit, Sections V, X.H.1-2.

R&L Lumber has failed to implement and maintain the minimum BMPs required by the General Permit as evidenced by the exceedances identified above.  Specifically, R&L Lumber has failed to comply with the following: good housekeeping requirements, preventive maintenance requirements; spill and leak prevention and response requirements; material handling and waste management requirements; erosion and sediment controls; employee training and quality assurance; and record keeping.  Permit, Section X.H.1(a-g).

R&L Lumber has further failed to implement advanced BMPs necessary to reduce or prevent discharges of pollutants in its storm water sufficient to meet the BAT/BCT standards, including:  exposure minimization BMPs; containment and discharge reduction BMPs; treatment control BMPs; or other advanced BMPs necessary to comply with the General Permit's effluent limitations.  General Permit, Sections X.H.2.

---

[1] The Facility was assigned the waste discharge identification number 1 12I030010 on December 5, 2022.

Notice of Violation and Intent to File Suit
December 30, 2022
Page 6

Each day that R&L Lumber have failed to develop and implement BAT and BCT at the Facility in violation of the General Permit is a separate and distinct violation of Section 301(a) of the Act, 33 U.S.C. § 1311(a). R&L Lumber has been in violation of the BAT and BCT requirements at its Facility every day since at least December 5, 2022.

### C. R&L Lumber Has Failed to Comply with the Monitoring Requirements of the General Permit.

The General Permit requires dischargers to implement a Monitoring Implementation Plan. General Permit, Section X.I. As part of their monitoring plan, dischargers must identify all storm water discharge locations. Permit, Section X.I.2. Dischargers must then conduct monthly visual observations of each drainage area, as well as visual observations during discharge sampling events. General Permit, Section XI.A.1 and 2.

Dischargers must collect and analyze storm water samples from two (2) storm events within the first half of each reporting year (July 1 to December 31) and two (2) storm events during the second half of each reporting year (January 1 to June 3). General Permit, Section XI.B. Section XI.B requires dischargers to sample and analyze during the wet season for basic parameters such as pH, total suspended solids ("TSS") and oil and grease ("O&G"), certain industry-specific parameters set forth in Table 2 of the General Permit, and other pollutants likely to be in the storm water discharged from the facility based on the pollutant source assessment. General Permit, Section XI.B.6. Dischargers must submit all sampling and analytical results via SMARTS within thirty (30) days of obtaining all results for each sampling event. General Permit, Section XI.B.11.

R&L Lumber has failed to develop and implement an adequate Monitoring Implementation Plan for its Facility, and has thus violated the monitoring requirements of the General Permit. For example, R&L Lumber has failed to monitor for every potential pollutant that is likely to be present at its Facility, including nutrients and pathogens. In addition, R&L Lumber has failed to collect the required number of samples for each reporting period. R&L Lumber has also failed to monitor every discharge location of storm water associated with industrial activities at its Facility. Each day that R&L Lumber has failed to develop and implement an adequate Monitoring Implementation Plan is a separate and distinct violation of the Act and Permit. R&L Lumber has been in violation of the Monitoring requirements every day since at least December 5, 2022.

### 6. R&L Lumber Has Failed to Develop and Implement an Adequate Storm Water Pollution Prevention Plan.

The General Permit requires dischargers to develop and implement a site-specific SWPPP. General Permit, Section X.A. The SWPPP must include, among other elements: (1) the facility name and contact information; (2) a site map; (3) a list of industrial materials; (4) a description of potential pollution sources; (5) an assessment of potential pollutant sources; (6) minimum BMPs; (7) advanced BMPs, if applicable; (8) a monitoring implementation plan; (9)

Notice of Violation and Intent to File Suit
December 30, 2022
Page 7

annual comprehensive facility compliance evaluation; and (10) the date that the SWPPP was initially prepared and the date of each SWPPP amendment, if applicable.  *See id.*

Dischargers must revise their SWPPP whenever necessary and certify and submit via the Regional Board's Storm Water Multiple Application and Report Tracking System ("SMARTS") their SWPPP within 30 days whenever the SWPPP contains significant revisions(s); and, certify and submit via SMARTS for any non-significant revisions not more than once every three (3) months in the reporting year.  General Permit, Section X.B.

CATs' investigation indicates that R&L Lumber has been operating with an inadequately developed and implemented SWPPP in violation of General Permit requirements.  R&L Lumber has failed to evaluate the effectiveness of its BMPs and to revise its SWPPP as necessary, resulting in the Facility's numerous continuing effluent limitation violations.

Each day R&L Lumber failed to develop and implement an adequate SWPPP at its Facility is a violation of the General Permit.  The SWPPP violations described above were at all times in violation of Section X of the General Permit.  R&L Lumber has been in violation of these requirements at its Facility every day since at least December 5, 2022.

## III.   Persons Responsible for the Violations.

CATs puts R&L Lumber on notice that they are the persons and entities responsible for the violations described above.  If additional persons are subsequently identified as also being responsible for the violations set forth above, CATs puts R&L Lumber on formal notice that it intends to include those persons in this action.

## IV.   Name and Address of Noticing Parties.

The name, address and telephone number of each of the noticing parties is as follows:

Patricia Clary, Executive Director
Californians for Alternatives to Toxics
P.O. Box 900
Eureka, CA 95502
(707) 834-4833

## V.   Counsel.

CATs has retained legal counsel to represent it in this matter.  Please direct all communications to:

Notice of Violation and Intent to File Suit
December 30, 2022
Page 8

Andrew L. Packard                    William Verick
William N. Carlon                    Klamath Environmental Law Center
Law Offices of Andrew L.             1125 16th Street, Suite 204
Packard                              Arcata, CA 95521
245 Kentucky Street, Suite B3        (707) 630-5061
Petaluma, CA 94952                   wverick@igc.org
(707) 782-4060
andrew@packardlawoffices.com
wncarlon@packardlawoffices.com


**VI.    Conclusion**

     CATs believes this Notice of Violations and Intent to File Suit sufficiently states grounds for filing suit.  We intend to file a citizen suit under Section 505(a) of the CWA against R&L Lumber and their agents for the above-referenced violations upon the expiration of the 60-day notice period.  If you wish to pursue remedies in the absence of litigation, we suggest that you initiate those discussions within the next 20 days so that they may be completed before the end of the 60-day notice period.  We do not intend to delay the filing of a complaint in federal court if discussions are continuing when that period ends.

Sincerely,

William Carlon
Law Offices of Andrew L. Packard
Counsel for Californians for Alternatives to Toxics

Notice of Violation and Intent to File Suit
December 30, 2022
Page 9

## SERVICE LIST

## VIA CERTIFIED MAIL

Michael Regan, Administrator
U.S. Environmental Protection Agency
1200 Pennsylvania Ave., N.W.
Washington, D.C. 20460

Martha Guzman, Regional Administrator
U.S. Environmental Protection Agency, Region IX
75 Hawthorne Street
San Francisco, CA 94105

Merrick B. Garland, U.S. Attorney General
U.S. Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, DC 20530-0001

Eileen Sobeck, Executive Director
State Water Resources Control Board
P.O. Box 100
Sacramento, CA 95812

Matthias St. John, Executive Officer
North Coast Regional Water Quality Control Board
5550 Skylane Boulevard Suite A
Santa Rosa, CA 95403

**ATTACHMENT A**
**Notice of Intent to File Suit, R&L Lumber**
**Significant Rain Events,\* December 5, 2022 – December 30, 2022**

December 5, 2022

December 9, 2022

December 10, 2022

December 11, 2022

December 23, 2022

December 26, 2022

December 27, 2022

December 28, 2022

December 29, 2022

December 30, 2022

1

2

3      **EXHIBIT D**

4

5

6

| Parameter | Test Method | Reporting Units | Evaluation Level | Instantaneous Maximum NAL, If Applicable |
|---|---|---|---|---|
| pH | See Section XI.C.2 of the General Permit | pH units | N/A | Less than 6.0 Greater than 9.0 |
| Total Suspended Solids | SM 2540-D | mg/L | 100 | 400 |
| Oil & Grease | EPA 1664A | mg/L | 15 | 25 |
| Zinc | EPA 200.8 | mg/L | 0.26 | |
| COD | SM 5220C | mg/L | 120 | |
| | | | | |

SM – Standard Methods for the Examination of Water and Wastewater, 18th edition
EPA – U.S. EPA test methods

**EXHIBIT E**

**Employee Training Protocols**

(a)     *Pollution Prevention Team:* Pursuant to Section X.D.1 of the General Permit, Defendant shall establish a Pollution Prevention Team that will be responsible for assisting with implementation of the requirements in the General Permit. Defendant shall update their SWPPP with detailed information regarding the Pollution Prevention Team, as set forth in Section X.D.1 of the General Permit.

(b)     *Employee Training Protocols:* Prior to the rainy season each year, and within thirty (30) days of hiring a new employee that will be responsible for assisting with implementation of the requirements of the General Permit, Defendant shall conduct an employee training for its employees that covers the following required practices, information, and topics ("Employee Training Protocols"):

     i.     Facility rules requiring that maintenance activities occur only in designated work areas under cover or indoors;

     ii.     Formal pre-rain protocol involving inspection of filters, deployment of wattles, and temporary coverage of material most likely to increase storm water-borne pollutants;

     iii.     When vehicle or equipment maintenance must be performed outdoors, absorbent should be laid before any operational activity and care taken to immediately contain, capture, and clean up any discharge or spills of waste fluids to the ground;

     iv.     Remove all abandoned or unused parts, refuse, machinery, and vehicles to the extent practicable and consolidate remaining materials to a designated portion of the Facility to enable containment of runoff via berms and media-based wattles;

     v.     Store all hazardous substances and wastes under cover, on a sealed surface equipped with secondary containment in secured and labeled containers;

     vi.     Label all waste containers with the name, description, and current storage start date of the waste. Keep the containers, containment, and storage areas clean, dry, and free of

spills, oil residues, trash, and debris;

vii.     All hazardous chemicals, including waste oil, engine coolant, hydraulic fluid, gasoline, diesel fuel, paint, and solvents, may only be disposed of in the designated containers;

viii.    Maintain a current inventory of hazardous materials and wastes (e.g., batteries, waste oils, hydraulic oil/fluid, antifreeze, oil filters, oily rags, used air filters, recycled fuels, etc.) generated onsite;

ix.      Inspect hazardous material and waste storage areas daily for proper implementation and maintenance of control measures and containment integrity; and

x.       Train employees on appropriate hazardous materials use and hazardous waste control and disposal procedures at the initial time of employment and then at least annually after that.