1  ANDREW L. PACKARD (State Bar No. 168690)
   WILLIAM N. CARLON (State Bar No. 305739)
2  Law Offices of Andrew L. Packard
   245 Kentucky Street, Suite B3
3  Petaluma, CA 94952
   Tel:  (707) 782-4060
4  Fax: (707) 782-4062
   E-mail: andrew@packardlawoffices.com
5          wncarlon@packardlawoffices.com

6  WILLIAM VERICK (State Bar No. 140972)
7  Klamath Environmental Law Center
   1125 16th Street, Suite 204
8  Arcata, CA 95521
   Tel: (707) 630-5061
9  Email: wverick@igc.org

   Attorneys for Plaintiff
10 CALIFORNIANS FOR ALTERNATIVES TO TOXICS

11
                  **UNITED STATES DISTRICT COURT**
12
                **NORTHERN DISTRICT OF CALIFORNIA**
13

14 | CALIFORNIANS FOR                          | Case No. 3:22-CV-07511-JSC |
15 | ALTERNATIVES TO TOXICS, a                 |                            |
   | non-profit corporation,                   | [~~PROPOSED~~] **CONSENT DECREE** |
16 |                    Plaintiff,             |                            |
   |                                           | **(Federal Water Pollution Control Act,** |
17 |         vs.                               | **33 U.S.C. §§ 1251 to 1387)** |
18 | R&L LUMBER COMPANY LLC,                    |                            |
   | JUSTIN LENA, AND UBI RUIZ,                 |                            |
19 |                    Defendants.            |                            |
20

21
            **WHEREAS**, Plaintiff Californians for Alternatives to Toxics (hereinafter "CAT") is a
22
   non-profit public benefit corporation dedicated to the preservation, protection, and defense of
23
   the environment, wildlife, and natural resources of California's waters;
24
            **WHEREAS**, Defendants R&L LUMBER COMPANY LLC, JUSTIN LENA, and UBI
25
   RUIZ (collectively hereinafter "Defendants") own and/or operate a lumber yard in Arcata,
26
   California (hereinafter referred to as the "Facility");
27
            **WHEREAS**, Defendants' primary industrial activities at the Facility include, but are
28

1   not limited to, the storage and treatment of logs, de-barking of logs, the storage and handling

2   of soil amendments/compost, loading and unloading of logs and wastes associated with log-

3   processing, equipment storage and maintenance, and the storage of various industrial

4   materials, including bark, sawdust, oil and grease, and fuel (the industrial activities at the

5   Facility fall under Standard Industrial Classification Code 2421 – Sawmills and Planing Mills,

6   General);

7       **WHEREAS,** a site map of the Facility is attached hereto as **Exhibit** A, and

8   incorporated herein by reference;

9       **WHEREAS,** CAT and Defendants collectively shall be referred to as the "Parties;"

10      **WHEREAS**, CAT has alleged that the Defendants' Facility collects and discharges

11  storm water into Janes Creek, Jolly Giant Creek, McDaniel Slough, Arcata Bay, and ultimately

12  the Pacific Ocean;

13      **WHEREAS**, storm water discharges associated with industrial activity are regulated

14  pursuant to the National Pollutant Discharge Elimination System ("NPDES"), General Permit

15  No. CAS000001, and State Water Resources Control Board ("State Board") Water Quality

16  Order No. 14-57-DWQ, issued pursuant to Section 402(p) of the Clean Water Act ("Act"),

17  33 U.S.C. §1342(p), (hereinafter "General Permit");

18      **WHEREAS**, on September 30, 2022 Plaintiff provided notice of Defendants' alleged

19  violations of the Act ("Clean Water Act Notice Letter"), and of its intention to file suit against

20  Defendants to the Administrator of the United States Environmental Protection Agency

21  ("EPA"); the Administrator of EPA Region IX; the U.S. Attorney General; the Executive

22  Director of the State Board; the Executive Officer of the Regional Water Quality Control

23  Board, North Coast Region ("Regional Board"); and to Defendants, as required by the Act, 33

24  U.S.C. § 1365(b)(1)(A) (a true and correct copy of CAT's Clean Water Act Notice Letter is

25  attached hereto as **Exhibit B** and incorporated herein by reference);

26      **WHEREAS**, on November 30, 2022, CAT filed a complaint against Defendants in the

27  United States District Court, Northern District of California (this matter is hereinafter referred

28  to as "the Action");

- 2 -

1    WHEREAS, on December 30, 2022 Plaintiff provided notice of Defendants' additional

2  alleged violations of the Act ("Second Clean Water Act Notice Letter"), and of its intention to

3  file suit against Defendants to the Administrator of the United States Environmental Protection

4  Agency ("EPA"); the Administrator of EPA Region IX; the U.S. Attorney General; the

5  Executive Director of the State Board; the Executive Officer of the Regional Water Quality

6  Control Board, North Coast Region ("Regional Board"); and to Defendants, as required by the

7  Act, 33 U.S.C. § 1365(b)(1)(A) (a true and correct copy of CAT's supplemental Clean Water

8  Act Notice Letter is attached hereto as **Exhibit C** and incorporated herein by reference);

9    WHEREAS, on March 1, 2023, CAT filed a supplemental complaint against

10  Defendants in the Action);

11    WHEREAS, the parties agree that Defendants entering into this Consent Decree

12  ("Decree") is not any admission of liability by Defendants regarding the claims made by

13  Plaintiff in the Action, and compliance with this Decree shall not be deemed to be compliance

14  with the General Permit or the Clean Water Act;

15    WHEREAS, Defendants deny the occurrence of the violations alleged in the Clean

16  Water Act Notice Letters and maintain that they have complied at all times with the provisions

17  of the General Permit and the Clean Water Act;

18    WHEREAS, the Parties agree that it is in their mutual interest to resolve this matter as

19  to all entities and persons named in the Clean Water Act Notice Letters without litigation and

20  enter into this Decree;

21    WHEREAS, within five (5) calendar days of mutual execution, this Decree shall be

22  submitted to the United States Department of Justice for the 45-day statutory review period,

23  pursuant to 33 U.S.C. § 1365(c);

24    **AND WHEREAS**, within ten (10) calendar days of expiration of the statutory review

25  period, or the earlier receipt of non-objection from the United States Department of Justice,

26  Plaintiff shall file with the Court a Request for Entry of Consent Decree (the date of entry of

27  the Consent Decree shall be referred to herein as the "Court Entry Date").

28

- 3 -

1  NOW THEREFORE IT IS HEREBY STIPULATED BETWEEN THE PARTIES,

2  AND ORDERED AND DECREED BY THE COURT AS FOLLOWS:

3  For the purposes of this Decree, the Parties agree that:

4  (a) the Court has jurisdiction over the subject matter of this action pursuant to Section

5  505(a)(1)(A) of the Clean Water Act, 33 U.S.C. § 1365(a)(1)(A);

6  (b) venue is appropriate in the United States District Court for the Northern District of

7  California pursuant to Section 505(c)(1) of the Clean Water Act, 33 U.S.C. §

8  1365(c)(1), because the Facility at which the alleged violations took place is located

9  within this District;

10  (c) the Complaint states claims upon which relief may be granted against Defendants

11  pursuant to Section 505 of the Clean Water Act, 33 U.S.C. § 1365;

12  (d) Plaintiff has standing to bring this action; and,

13  (e) the Court shall retain jurisdiction over this matter for purposes of interpreting,

14  modifying, or enforcing the terms of this Decree for the life of the Decree, or as

15  long thereafter as is necessary for the Court to resolve any motion to enforce this

16  Decree.

17  I.    **COMMITMENTS OF DEFENDANTS**

18  1.    **Compliance with General Permit and the Clean Water Act.**  Throughout

19  the term of this Decree, Defendants shall comply with all the requirements of the General

20  Permit and the Clean Water Act, subject to any defenses available under the law.

21  2.    **Implementation of Specific Storm Water Best Management Practices.**

22  Unless otherwise indicated below, on or before **September 1, 2023**, Defendants shall

23  complete the implementation and incorporation into the Facility's Storm Water Pollution

24  Prevention Plan ("SWPPP") of the following storm water source control measures and Best

25  Management Practices ("BMPs") at the Facility:

26  (a)    *Mandatory Minimum Best Management Practices.*  Defendants shall

27  implement all mandatory minimum BMPs set forth in Section X.H of the General Permit;

28

- 4 -

(b)     *Facility Regrading.*  The Facility shall be regraded to direct all storm water flows to the current discharge point in the SW corner of the yard identified as DA-2.

(c)     *Reconstruction of DA-2.*  All Facility storm water shall be directed through a series of bioswales and other retention features that will be constructed by Defendants, consistent with the volumetric-based design storm standards set forth in Section X.H.6.a.i of the General Permit (an 85th percentile 24-hour storm event, based on historical records) ("Reconstructed Stormwater Discharge Feature"). The approximate future location of the Reconstructed Stormwater Discharge Feature is shown in Exhibit A, attached hereto. The Reconstructed Stormwater Discharge Feature shall be designed to meet the design storm standards set forth in Section X.H.6.a.i of the General Permit.

(d)     *Elimination/Reduction of Storm Water Run-On.*  A perimeter berm or trench drain shall be installed around the Facility where necessary to eliminate, or reduce as much as feasible, run-on from adjacent areas, including areas to the north and west of the Facility. The approximate future location of the perimeter berm is shown in Exhibit A, attached hereto.

(e)     *Facility Mapping.*  On or before **September 1, 2023**, Defendants agree to revise the Site Map appended to the current SWPPPs to comply with all of the requirements in Section X.E.1-3 of the General Permit and for use in documenting this Decree.

(f)     *Employee Training Program.* Consistent with Section X.D.1 and X.H.1.f of the General Permit, Defendants shall establish a Storm Water Pollution Prevention Team ("SWPPT") and shall ensure that all employees implementing the various compliance activities under the General Permit are properly trained to implement the requirements of the General Permit. The requirements for the SWPPT and the Employee Training Program are discussed in detail in Exhibit E, which is incorporated herein by reference.

3.     **SWPPP Amendments.**  On or before **September 1, 2023,** Defendants shall amend the Facility SWPPP to incorporate all of the relevant requirements of this Decree and the General Permit.  These revisions shall reflect all then-current site conditions and practices and identify potential contaminants of concern, identify the location of all pervious and

- 5 -

impervious areas, drop inlets, BMPs, and storm water flow vectors.  These revisions shall also provide for required data logging; weekly monitoring and maintenance of all Facility collection and discharge points during the Wet Season; and the twice-annual storm water management training for Facility employees referenced above.

4.      **Sampling Frequency.**  For the 2023-2024 and 2024-2025 reporting years ending June 30th (2024 and 2025), Defendants shall collect and analyze samples at the Facility from three (3) Qualifying Storm Events[1] ("QSEs") within the first half of each reporting year (July 1 to December 31), and three (3) QSEs within the second half of each reporting year (January 1 to June 30).  The storm water sample results shall be compared with the values set forth in **Exhibit D**, attached hereto, and incorporated herein by reference.  If the results of any such samples exceed the parameter values set forth in **Exhibit D**, Defendants shall comply with the "Action Memorandum" requirements set forth below.

5.      **Sampling Parameters.**  All six (6) samples in each reporting year shall be analyzed for each of the constituents listed in **Exhibit D**, including TMDLs, as applicable, by a laboratory accredited by the State of California.  All samples collected from the Facility shall be delivered to the laboratory as soon as possible to ensure that sample "hold time" is not exceeded.  Analytical methods used by the laboratory shall comply with General Permit requirements in regards to both test method and detection limit.  See General Permit, Table 2, at 43.  Sampling results shall be provided to CAT within ten (10) days of Defendants' receipt of the laboratory report from each sampling event, pursuant to the Notice provisions below.

6.      **"Action Memorandum" Trigger; CAT's Review Of "Action Memorandum"; Meet-and-Confer.**  If any sample taken during the two (2) reporting years referenced in Paragraph 4 above exceeds the Evaluation Levels set forth in **Exhibit D**, or if Defendants fail to collect and analyze samples from six (6) QSEs, then Defendants shall

---

[1] A Qualifying Storm Event (QSE) is defined in the General Permit as a precipitation event that: (a) produces a discharge from at least one drainage area; and (b) is preceded by 48 hours with no discharge from any drainage area.  *See* General Permit, Section XI(b)(1).

- 6 -

1 prepare a written statement discussing the exceedance(s) and/or failure to collect and analyze

2 samples from six (6) storm events, the possible cause and/or source of the exceedance(s), and

3 additional measures that will be taken to address and eliminate future exceedances and/or

4 failures to collect required samples ("Action Memorandum").

5       If required, the Action Memorandum shall be provided to CAT not later than 15 days

6 following the conclusion of each reporting year, on July 15, 2024 and July 15, 2025. Such

7 additional measures may include, but are not limited to, further material improvements to the

8 storm water collection and discharge system, changing the type and frequency of Facility

9 sweeping, changing the type and extent of storm water filtration media or modifying other

10 industrial activities or management practices at the Facility. Such additional measures, to the

11 extent feasible, shall be implemented immediately and in no event later than sixty (60) days

12 after the due date of the Action Memorandum. Within seven (7) days of implementation, the

13 Facility SWPPP shall be amended to include all additional BMP measures designated in the

14 Action Memorandum. CAT may review and comment on an Action Memorandum and

15 suggest any additional pollution prevention measures it believes are appropriate; however,

16 CAT's failure to do so shall not be deemed to constitute agreement with the proposals set forth

17 in the Action Memorandum. Upon request by CAT, Defendants agree to meet and confer in

18 good faith (at the Facility, if requested by Plaintiff) regarding the contents and sufficiency of

19 the Action Memorandum.

20       7.    **Inspections During The Term Of This Decree.** In addition to any site

21 inspections conducted as part of the settlement process and the meet-and-confer process

22 concerning an Action Memorandum as set forth above, Defendants shall permit

23 representatives of CAT to perform up to three (3) physical inspections of each Facility during

24 the term of this Decree. These inspections shall be performed by CAT's counsel and

25 consultants and may include sampling, photographing, and/or videotaping and CAT shall

26 provide Defendants with a copy of all sampling reports, photographs and/or video. CAT shall

27 provide at least seventy-two (72) hours advance notice of such physical inspection, except that

28 Defendants shall have the right to deny access if circumstances would make the inspection

[PROPOSED] CONSENT DECREE                      Case No. 3:22-CV-07511-JSC

1    unduly burdensome and pose significant interference with business operations or any

2    party/attorney, or the safety of individuals.  In such case, Defendants shall specify at least

3    three (3) dates within the two (2) weeks thereafter upon which a physical inspection by CAT

4    may proceed.  Defendants shall not make any alterations to Facility conditions during the

5    period between receiving CATS' initial seventy-two (72) hour advance notice and the start of

6    CAT's inspection that Defendants would not otherwise have made but for receiving notice of

7    CAT's request to conduct a physical inspection of the Facility, excepting any actions taken in

8    compliance with any applicable laws or regulations.  Nothing herein shall be construed to

9    prevent Defendants from continuing to implement any BMPs identified in the SWPPP during

10   the period prior to an inspection by CATS or at any time.

11         8.        **Communications To/From Regional and State Water Boards.**  During the

12   term of this Decree, Defendants shall provide CAT with courtesy copies of all documents

13   submitted to, or received from, the Regional Water Board or the State Water Board concerning

14   storm water discharges from the Facilities, including, but not limited to, all documents and

15   reports submitted to the Regional Water Board and/or State Water Board as required by the

16   current General Permit.  Such documents and reports shall be provided to CATS via email

17   pursuant to the Notice provisions set forth below and contemporaneously with Defendants'

18   submission(s) to, or, receipt from, such agencies.

19         9.        **SWPPP Amendments.**  Pursuant to the Notice provisions set forth below,

20   Defendants shall provide CAT with a copy of any amendments to the Facility SWPPP made

21   during the term of the Decree within fourteen (14) days of such amendment.

22   **II.    MITIGATION, COMPLIANCE MONITORING, AND FEES AND COSTS**

23         10.       **Mitigation Payment In Lieu Of Civil Penalties Under the Clean Water**

24   **Act.**  As mitigation to address any potential harms from the Clean Water Act violations

25   alleged in the Action, Defendants agree to pay the sum of $50,000, which funds Plaintiff's

26   counsel shall forward to the Rose Foundation for Communities and the Environment for

27   projects to improve water quality in the Arcata/Humboldt Bay watershed.

28         11.       **Compliance Monitoring Funding.**  To defray CAT's reasonable

1  investigative, expert, consultant and attorneys' fees and costs associated with monitoring

2  Defendants' compliance with this Decree, Defendants agree to pay the sum of $15,000 to a

3  compliance monitoring fund maintained by counsel for CAT as described below.  Compliance

4  monitoring activities may include, but shall not be limited to, site inspections, review of water

5  quality sampling reports, review of annual reports, and discussions with Defendant concerning

6  the ERA reporting requirements of the General Permit.  Compliance monitoring funds shall

7  not be used to pay attorneys' fees and costs associated with negotiating any amendments to

8  this Decree; the recovery of any such fees or costs shall be addressed in any amendment to this

9  Decree.

10      **12.      Reimbursement of Fees & Costs.**  Defendants agree to reimburse CATS in

11  the amount of $85,000 to defray CATS' reasonable investigative, expert, consultant, and

12  attorneys' fees and costs, and all other costs incurred as a result of investigating the activities

13  at the Facility, bringing the action, and negotiating a resolution of this action in the public

14  interest.  Payment shall be made payable to the "Law Offices of Andrew L. Packard

15  Attorney-Client Trust Account" and remitted to Plaintiff's counsel at the Notice address

16  provided herein within ten (10) days after the Court Entry Date.

17      **13.      Payment Schedule; Liability.**  Pursuant to Paragraphs 10 – 12, Defendants

18  are jointly and severally liable in the total amount of $150,000 to Plaintiff, payable to the Law

19  Offices of Andrew L. Packard Attorney Client Trust Account.  Defendants shall remit these

20  funds as follows:

21      (a) $50,000 within ten (10) days of the Court Entry Date;

22      (b) $25,000 on or before December 15, 2023;

23      (c) $25,000 on or before March 15, 2024;

24      (d) $25,000 on or before June 15, 2024; and,

25      (e) $25,000 on or before September 15, 2024.

26  In the event that any payment owed by Defendants under this Consent Decree is not remitted

27  or post-marked on or before its due date, Defendants shall be deemed to be in default of their

28  obligations under this Consent Decree.  Plaintiff shall provide written notice to Defendants of

1   any default; if Defendant fails to remedy the default within five (5) business days of such

2   notice, then all future payments due hereunder shall become immediately due and payable,

3   with the prevailing federal funds rate applying to all interest accruing on unpaid balances due

4   hereunder, beginning on the due date of the funds in default.

5   **III.   DISPUTE RESOLUTION AND ENFORCEMENT OF CONSENT DECREE**

6        **14.**      If a dispute under this Decree arises, or either Party believes that a breach of

7   this Decree has occurred, the Parties shall meet and confer within seven (7) days of receiving

8   written notification from the other Party of a request for a meeting to determine whether a

9   breach has occurred and to develop a mutually agreed upon plan, including implementation

10  dates, to resolve the dispute.  If the Parties fail to meet and confer, or the meet-and-confer does

11  not resolve the issue, after at least seven (7) days have passed after the meet-and-confer

12  occurred or should have occurred, either Party shall be entitled to all rights and remedies under

13  the law, including filing a motion with the United States District Court of California, Northern

14  District, which shall retain jurisdiction over the Action until the Termination Date for the

15  limited purposes of enforcement of the terms of this Decree.  The Parties shall be entitled to

16  seek fees and costs incurred in any such motion, and such fees and costs shall be awarded,

17  pursuant to the provisions set forth in the then-applicable federal Clean Water Act and Rule 11

18  of the Federal Rules of Civil Procedure, and applicable case law interpreting such provision.

19       **15.     CAT's Waiver and Release.**  Upon the Court Entry Date of this Decree, CAT,

20  on its own behalf and on behalf of its members, subsidiaries, successors, assigns, directors,

21  officers, agents, attorneys, representatives, and employees, releases Defendants and its

22  officers, directors, employees, shareholders, parents, subsidiaries, and affiliates, and each of its

23  predecessors, successors and assigns, and each of their agents, attorneys, consultants, and

24  other representatives (each a "Released Defendant Party") from, and waives all claims arising

25  from or pertaining to the Notice Letters, including, without limitation, all claims for injunctive

26  relief, damages, penalties, fines, sanctions, mitigation (excluding all fees of attorneys, experts,

27  and others, and costs per Section II above), or any other sum incurred or claimed or which

28  could have been claimed under the Clean Water Act in this Action, for the alleged failure of

- 10 -

1  Defendants to comply with the Clean Water Act at the Facility, up to the Court Entry Date.

2  **16.      Defendants' Waiver and Release.**  Defendants, on their own behalf and on

3  behalf of any Released Defendant Party under its control, release CAT (and its officers,

4  directors, employees, members, parents, subsidiaries, and affiliates, and each of their

5  successors and assigns, and its agents, attorneys, and other representative) from, and waives all

6  claims which arise from or pertain to the Action, including all claims for fees (including fees

7  of attorneys, experts, and others), costs, expenses or any other sum incurred or claimed or

8  which could have been claimed for matters associated with or related to the Action.

9  **IV.   MISCELLANEOUS PROVISIONS**

10  **17.**      The Parties enter into this Decree for the purpose of avoiding prolonged and

11  costly litigation of the Clean Water Act claims in the Action.  Nothing in this Decree shall be

12  construed as, and Defendants expressly do not intend to imply, an admission as to any fact,

13  finding, issue of law, or violation of law, nor shall compliance with this Decree constitute or be

14  construed as an admission by Defendants of any fact, finding, conclusion, issue of law, or

15  violation of law, nor deemed to be compliance with the General Permit or the Clean Water Act.

16  However, this paragraph shall not diminish or otherwise affect the obligation, responsibilities,

17  and duties of the Parties under this Decree.

18  **18.**      The Decree shall be effective upon mutual execution by all Parties.  The

19  Decree shall terminate on the "Termination Date," which shall be the first of the following two

20  dates: (1) **November 1, 2025**; or (2) the date on which both of the following have occurred: (a)

21  the Defendants have completed their obligations under Paragraphs 10 - 13 of this Consent

22  Decree; and (b) the Defendants submit a Notice of Termination of Coverage under the General

23  Permit to the Regional Water Quality Control Board.

24  **19.**      The Decree may be executed in one or more counterparts which, taken

25  together, shall be deemed to constitute one and the same document.  An executed copy of this

26  Decree shall be valid as an original.

27  **20.**      In the event that any one of the provisions of this Decree is held by a court to

28  be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

- 11 -

21.     The language in all parts of this Decree, unless otherwise stated, shall be construed according to its plain and ordinary meaning.  This Decree shall be construed pursuant to the law of the United Sates, without regard to choice of law principles.

22.     The undersigned are authorized to execute this Decree on behalf of their respective Parties and have read, understood and agreed to be bound by all of the terms and conditions of this Decree.

23.     All agreements, covenants, representations and warranties, express or implied, oral or written, of the Parties concerning the subject matter of this Decree are contained herein. This Decree and its attachments are made for the sole benefit of the Parties, and no other person or entity shall have any rights or remedies under or by reason of this Decree, unless otherwise expressly provided for therein.

24.     **Notices.**  Any notices or documents required or provided for by this Decree or related thereto that are to be provided to CAT pursuant to this Decree shall be hand-delivered or sent by U.S. Mail, postage prepaid, and addressed as follows or, in the alternative, shall be sent by electronic mail transmission to the email addresses listed below:

Patricia Clary, Executive Director
Californians for Alternatives to Toxics
600 F Street, Suite 3
Arcata, California 95521
Tel. (707) 834-4833
E-mail: patty@alt2tox.org

With copies sent to:
William Verick
Klamath Environmental Law Center
1125 16th Street, Suite 204
Arcata, CA 95521
Email: wverick@igc.org

And to:

Andrew L. Packard
William Carlon
Law Offices of Andrew L. Packard
245 Kentucky Street, Suite B3
Petaluma, California 94952
Tel:  (707) 782-4060
E-mail: andrew@packardlawoffices.com
            wncarlon@packardlawoffices.com

- 12 -

[PROPOSED] CONSENT DECREE                                        Case No. 3:22-CV-07511-JSC

Any notices or documents required or provided for by this Decree or related thereto that are to be provided to Defendants pursuant to this Decree shall be sent by U.S. Mail, postage prepaid, and addressed as follows or, in the alternative, shall be sent by electronic mail transmission to the email addresses listed below:

> Justin Lena
> R&L Lumber Company
> 1220 5th Street
> Arcata, CA 95521
> Tel: (925) 890-1468
> E-Mail: justin@randllumber.com

With copies sent to:

> Sean Hungerford
> HARRISON, TEMBLADOR,
> HUNGERFORD & GUERNSEY LLP
> 2801 T Street
> Sacramento, CA 95816
> Telephone: (916) 228-4229
> Email: shungerford@hthglaw.com

Each Party shall promptly notify the other of any change in the above-listed contact information.

     **25.**     Signatures of the Parties transmitted by facsimile or email shall be deemed binding.

     **26.**     If for any reason the Court should decline to approve this Decree in the form presented, the Parties shall use their best efforts to work together to modify the Decree within thirty (30) days so that it is acceptable to the Court. If the Parties are unable to modify this Decree in a mutually acceptable manner, this Decree shall become null and void.

     **27.**     This Decree shall be deemed to have been drafted equally by the Parties, and shall not be interpreted for or against any Settling Party on the ground that any such party drafted it.

     **28.**     This Decree and the attachments contain all of the terms and conditions agreed upon by the Parties relating to the matters covered by the Decree, and supersede any and all prior and contemporaneous agreements, negotiations, correspondence, understandings, and

communications of the Parties, whether oral or written, respecting the matters covered by this

Decree. This Decree may be amended or modified only by a writing signed by the Parties or

their authorized representatives. Any amendments to this Decree shall be subject to the United

States Department of Justice's 45-day statutory review as set forth in 33 U.S.C. § 1365(c).

The Parties hereto enter into this Decree and respectfully submit it to the Court for its

entry.

APPROVED AS TO CONTENT:

Dated: _July 5_____, 2023        CALIFORNIANS FOR ALTERNATIVES TO
                                 TOXICS

                          By: _Patricia Clary_____
                              Patricia Clary, Executive Director

Dated: _____, 2023         R&L LUMBER COMPANY LLC

                          By: _____
                              Justin Lena, Owner

Dated: _____, 2023         JUSTIN LENA

                          By: _____
                              Justin Lena

Dated: _____, 2023         UBI RUIZ

                          By: _____
                              Ubi Ruiz

APPROVED AS TO FORM:

Dated: _July 5_____, 2023        LAW OFFICES OF ANDREW L.PACKARD

                          By: _____
                              Andrew L. Packard
                              Attorneys for Plaintiff
                              CALIFORNIANS FOR ALTERNATIVES TO
                              TOXICS

- 14 -

[PROPOSED] CONSENT DECREE

1   communications of the Parties, whether oral or written, respecting the matters covered by this

2   Decree.  This Decree may be amended or modified only by a writing signed by the Parties or

3   their authorized representatives.  Any amendments to this Decree shall be subject to the United

4   States Department of Justice's 45-day statutory review as set forth in 33 U.S.C. § 1365(c).

5        The Parties hereto enter into this Decree and respectfully submit it to the Court for its

6   entry.

7   APPROVED AS TO CONTENT:

8   Dated: _____, 2023     CALIFORNIANS FOR ALTERNATIVES TO
9        TOXICS

10

     By:   _____
11        Patricia Clary, Executive Director

12   Dated: __7/5/23_____, 2023     R&L LUMBER COMPANY LLC

13

     By:   _____
14        Justin Lena, Owner

15

16   Dated: __7/5/23_____, 2023     JUSTIN LENA

17        By:   _____
18        Justin Lena

19

20   Dated: __7/5/23_____, 2023     UBI RUIZ

21        By:   _____
     Ubi Ruiz

22   APPROVED AS TO FORM:

23   Dated: _____, 2023     LAW OFFICES OF ANDREW L.PACKARD

24

25        By:   _____
26        Andrew L. Packard
     Attorneys for Plaintiff
27        CALIFORNIANS FOR ALTERNATIVES TO
     TOXICS

28

- 14 -

Dated: ___July 11, 2023___, 2023

HARRISON, TEMBLADOR, HUNGERFORD & GUERNSEY LLP

By: _____

Sean Hungerford
Attorney for Defendants
R&L LUMBER COMPANY LLC, JUSTIN LENA, AND UBI RUIZ

Good cause appearing, **IT IS SO ORDERED.**

Dated: ___September 6___, 2023

By: _____

Hon. Judge Jacqueline Scott Corley
Unites Stated District Court
Northern District of California

- 15 -